# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
VOLUMETRICS MEDICAL IMAGING,      )
L.L.C.,                           )
                                  )
                 Plaintiff,       )
                                  )
            v.                    )        1:05CV955
                                  )
TOSHIBA AMERICA MEDICAL SYSTEMS,  )
INC. and SIEMENS MEDICAL SOLUTIONS )
USA, INC.,                        )
                                  )
                 Defendants.      )
```

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on an Emergency Motion to Preclude Volumetrics from Adding New Infringement Contentions (Docket Entry 219) filed by Defendant Siemens Medical Solutions USA, Inc. ("Siemens") and an Amended Report of Claims to be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 292) filed by Plaintiff Volumetrics Medical Imaging, L.L.C. ("VMI"). For the reasons that follow, the Court will grant both Motions in part and will deny them in part, in that the Court will allow VMI to add the proposed infringement claims regarding the X500 machine, but will preclude VMI from adding any other new infringement claims.

### BACKGROUND

VMI brought the instant patent infringement action against Siemens, Toshiba America Medical Systems, Inc. ("Toshiba"), and other entities that have since entered settlements that resulted in their dismissals as defendants. (See Docket Entries 1, 262, 360,

392.)[1]   The underlying patents "concern diagnostic ultrasound machines and associated methods for acquiring and displaying images of the human body, in real time and in both two and three dimensions."   (Docket Entry 262, ¶ 1.)   Allegedly, "[t]hese technologies represent a significant advance in the field of diagnostic imaging, as they permit physicians to view the human body with a degree of spatial detail and clarity never before achieved by any other form of imaging." (<u>Id.</u>)  VMI's allegations against Siemens involve United States Patent Nos. 5,546,807 ("'807") and 6,276,211 ("'211").  (<u>Id.</u> at ¶¶ 21, 25-28, 36, 37, 40-43.)

VMI's Disclosure of Asserted Claims and
Preliminary Infringement Contentions

Early in the case, this Court (per United States Magistrate Judge Russell A. Eliason) entered a Scheduling Order (Docket Entry 55) that approved the parties' Joint Scheduling Report (Docket Entry 54), which included provisions adopting the Patent Local Rules of the Northern District of California with respect to VMI's "Disclosure of Asserted Claims & Preliminary Infringement Contentions" (<u>id.</u> at 2-3).[2]  Pursuant to those rules, "a party claiming patent infringement shall serve on all parties a

---

[1] In light of those settlements, the Court has included only the names of the remaining defendants in the caption for this Order.

[2] During the pendency of this case, the Northern District of California amended its Patent Local Rules in a manner that did not substantively affect the standards relevant in this case, but that did re-number certain provisions (including the "good cause" requirement for amendment of preliminary infringement contentions). <u>See</u> <u>Acer, Inc. v. Technology Props. Ltd.</u>, Nos. 5:08CV877JF/HRL, 5:08CV882JF/HRL, 5:08CV5398JF/HRL, 2011 WL 1838768, at *2 (N.D. Cal. May 13, 2011) (unpublished).  To avoid confusion, the Court will cite to the prior, rather than the current, codification of said Patent Local Rules.

'Disclosure of Asserted Claims and Infringement Contentions.'"
N.D. Cal. Pat. L.R. 3-1. Such disclosure must identify, inter
alia, "[e]ach claim of each patent in suit that is allegedly
infringed by each opposing party," N.D. Cal. Pat. R. 3-1(a), and,
"[s]eparately for each asserted claim, each accused apparatus,
product, device, process, method, act, or other instrumentality
('Accused Instrumentality') of each opposing party of which the
party is aware," N.D. Cal. Pat. L.R. 3-1(b).

Consistent with the timeline in the Joint Scheduling Report,
VMI served its Disclosure of Asserted Claims and Preliminary
Infringement Contentions on Siemens on June 21, 2006. (See Docket
Entry 54 at 2-3; Docket Entry 61-3; Docket Entry 87 at 2.)
"Regarding Siemens' products, those disclosures set out ten claims
under [the '807 patent] and two claims under [the '211 patent]. All
of those claims were explicitly asserted against a Siemens product
known as the Siemens Sonoline Antares." (Docket Entry 87 at 2.)
"However, it was noted that Plaintiff believed that the same claims
applied to several other Siemens' products -- the Sonoline Adara,
the Sonoline G50, the Sonoline G60 S, the CV70, and the Acuson
Sequoia 4D models -- in the same or an analogous manner." (Id.;
see also Docket Entry 61-3 at 2, 7 ("VMI suspects that the same
chart also applies in the same or analogous manner to the Siemens
4D devices including at least the Sonoline Adara, the Sonoline G50,
the Sonoline G60 S, the CV70, and the Acuson Sequoia 4D models.").)

"Siemens notified Plaintiff that [Siemens] did not believe the
disclosures met the requirements of [Northern District of

California Patent Local] Rule 3-1. Commendably, Siemens and Plaintiff negotiated the dispute and were able to agree on an amended scheduling order which allowed Plaintiff to serve 'revised' claims and contentions on or before July 13, 2006." (Docket Entry 87 at 2; <u>see also</u> Docket Entries 57, 61-5.)[3] The Court (per Magistrate Judge Eliason) granted the parties' joint motion in that regard and VMI served Siemens with a Revised Disclosure of Asserted Claims and Preliminary Infringement Contentions on July 13, 2006. (Docket Entries 58, 61-4.) Siemens, however, moved to strike said Revised Disclosure on the ground that VMI had added <u>new</u> infringement claims and not simply revised its disclosure to provide required information for its <u>existing</u> infringement claims. (Docket Entry 60.) In support of said Motion, Siemens argued that Northern District of California Patent Local Rule 3-7 obligated VMI to show "good cause" in order to add new infringement claims. (<u>See</u> Docket Entry 61 at 5-6.) VMI's response did not contest the applicability of this "good cause" standard, but instead contended that it "ha[d] ample good cause for revising its infringement contentions . . . [because] the portions of the revised contentions about which Siemens complains were the result of newly discovered relevant evidence of patent infringement." (Docket Entry 62 at 5.)

---

[3] Specifically, Siemens contended that VMI had not provided an adequate claims chart (Docket Entry 61-5 at 2 (citing N.D. Cal. Pat. L.R. 3-1(c))), had not indicated "'[w]hether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality'" (<u>id.</u> at 3 (quoting N.D. Cal. Pat. L.R. 3-1(d))), and had not adequately identified which of Siemens's products allegedly infringed on VMI's patented claims (<u>id.</u> (citing N.D. Cal. Pat. L.R. 3-1(f))).

In addressing Siemens's foregoing Motion to Strike, the Court (per Magistrate Judge Eliason) noted that:

> There were at least three marked differences between the revised and original claims and contentions [VMI served on Siemens]. First, the revised version included claim charts for not only the Siemens Sonoline Antares, but also for other Siemens products, including some from the Sonoline G50 and G60 S lines. Second, the revised version drops the two prior claims associated with the 211 patent and adds seventeen different claims for that patent. Finally, the revised version is much more specific and informative than the original version.

(Docket Entry 87 at 2-3; <u>see also</u> Docket Entry 61-4.)  The Court further observed that "the research that led to the much more specific revised disclosures could have been done in time to have filed the revised disclosures at the original disclosure deadline" and that the new filing went "far beyond what either Siemens or the Court envisioned in allowing the revision."  (<u>Id.</u> at 3-4.) Although the Court described VMI's "addition of claims" as "troublesome," it "allow[ed] the case to proceed using the revised disclosures" because of the absence of any showing that "Siemens ha[d] been significantly prejudiced."  (<u>Id.</u> at 5.)[4]

In light of the Court's foregoing ruling, the case (as to Siemens) thus moved forward on VMI's assertions of infringement of "claims 1-4, 10, 19-21, and 23 of [the '807 patent by Siemens's] accused instrumentalities identified as the Sonoline Antares, the

_____

[4] In reaching this conclusion, the Court observed that "the situation is not truly an amendment situation, i.e. a situation where proper initial disclosures are made, discovery proceeds, and subsequent events cause a party to seek to amend the initial disclosures."  (Docket Entry 87 at 4 (citing <u>ZiLOG, Inc. v. QuickLogic Corp.</u>, No. C03-03725 JW, 2006 WL 56057 (N.D. Cal. Mar. 6, 2006) (unpublished)).)  By contrast, judged from that perspective, VMI's Amended Report and Conditional Motion does involve an actual "amendment situation."

Acuson Antares, the Sonoline G 60S, and the Sonoline G50" (Docket Entry 61-4 at 2) and "claims 1-3, 5, 7, 16-18, 20, 22, and 24-30 of [the '211 patent by Siemens's] accused instrumentalities identified as the Sonoline Antares and the Acuson Antares" (id. at 50).

On January 3, 2007, a number of the defendants filed a Motion to Limit Number of Claims to be Construed at the *Markman* Hearing. (Docket Entry 99.) The moving defendants contended that "the number of claims asserted in this case, as it is currently postured, will significantly complicate the claim construction proceedings and all proceedings going forward, including trial, if the case proceeds to trial against all the current defendants at the same time." (Id. at 1 n.1.) VMI opposed said Motion. (Docket Entry 120.) During this same time period, the parties (including VMI and Siemens) made extensive filings about claim construction as to VMI's existing infringement claims regarding the '807 patent and the '211 patent (see Docket Entries 95, 115, 121, 122, 125, 126) and in connection with a summary judgment motion filed by the defendants regarding the alleged invalidity of certain claims within the '807 patent (see Docket Entries 113, 131, 136, 150, 154).

Initial Sparring over VMI's Addition of New Infringement Claims

On May 23, 2007, VMI advised Siemens by letter "that VMI intend[ed] to assert . . . additional [infringement] claims against Siemens' accused products." (Docket Entry 220-3 at 2.)[5] According

---

[5] That same day, VMI sent similar letters to other defendants (since dismissed from the case), but not to Toshiba. (See Docket Entry 304 at 2.)

to the letter, "VMI became aware of these additional instances of infringement through analysis of Siemens' document production and inspection of Siemens' accused products." (Id.) VMI identified the new infringement claims as follows: "the Antares and the G60S infringe claims 24 and 25 [of the '807 patent,] . . . the G50 and G60S infringe claims 3, 5, 7, 18, 20, and 22 [of the '211 patent, and] . . . the Antares infringes claims 6 and 21 [of the '211 patent]." (Id.) The letter further reported that "VMI believe[d] that [Siemens's] newly released X500 infringes one or more of the asserted patents, including at least the '807 patent[,] . . . [and that] VMI w[ould] inform Siemens of [VMI's] assertions related to the X500 after VMI has received relevant documents from Siemens and conducted an inspection of the machine." (Id.) VMI concluded the letter with a declaration that it would "update its Infringement Contentions no later than thirty days after the Court's claim construction ruling to reflect these assertions." (Id.)

On May 29, 2007, Siemens filed its instant Motion seeking to preclude VMI from adding new infringement claims. (Docket Entry 219.) Specifically, Siemens objected that it "ha[d] spent nearly a year completing discovery and developing its case within the confines of [VMI's] infringement contentions served [on] July 13, 2006 . . . [b]ut that with just over one week of fact discovery remaining, [VMI had indicated an] intent to drastically expand the scope of this already large and complex case by adding brand new asserted patent claims and . . . tripl[ing] the number of products accused of infringing [the '211 patent]." (Docket Entry 220 at 1

(emphasis omitted).)[6] Siemens further noted that, "[i]n an effort
to streamline this complex multi-party patent infringement action
. . ., the Court adopted the Northern District of California Patent
Initial Disclosure rules . . . [which] require that the patentee
serve highly detailed preliminary infringement contentions early in
the case, which may be amended only upon a showing of 'good
cause.'" (Id. at 2; see also id. at 4-5 (discussing N.D. Cal. L.
Pat. R. 3-7 and cases construing same).)

Two days later, Magistrate Judge Eliason held a hearing
regarding various pending matters. (See Docket Entry dated May 31,
2007; Docket Entry 410.) During that hearing, counsel for one
group of defendants referenced VMI's letters dated May 23, 2007,
and Siemens's instant Motion seeking to preclude VMI from adding
new infringement claims, in the context of arguing for restrictions
on the scope of certain of VMI's discovery requests. (See Docket
Entry 410 at 32.) Later in the hearing, Magistrate Judge Eliason
noted that he "ha[d]n't ruled on the [request for] restrictions [as
to discovery] on . . . new claims" and asked "[d]oes that need to
be ruled on now?" (Docket Entry 410-2 at 24.)[7] He then added:

---

[6] Siemens also alleged that VMI's proposed "brand new claims 24 and 25 of
the '807 patent and brand new claims 6 and 21 of the '211 patent . . . were [not]
addressed in the parties' claim construction briefing." (Docket Entry 220 at 3.)

[7] The transcript of the hearing on May 31, 2007, appears in the Court's
CM/ECF docketing system in three separate parts, Docket Entries 410, 410-1, and
410-2, each with independent pagination in the CM/ECF footer. Docket Entry 410
encompasses pages 1-59 of the transcript (as paginated by the court reporter),
Docket Entry 410-1 encompasses pages 60-118 of the transcript (as paginated by
the court reporter), and Docket Entry 410-2 encompasses pages 119-77 of the
transcript (as paginated by the court reporter). The parenthetical citations to
(continued...)

The new claims, I can tell you what my view on that is, is that nobody's added any new claims.  You've set out your claims in your preliminary motion.  No one's added anything new.  You can argue, but I'm not considering those necessarily relevant.  <u>It's too late in the game to be starting to be grabbing all kinds of new things</u>, and . . . I don't know if that's going to be an issue or not.

(<u>Id.</u> (emphasis added).)[8]

VMI's counsel then received permission from the Court to briefly address "the letter [VMI] did send out a week [earlier] concerning additional claims that [VMI] would like to assert." (<u>Id.</u> at 24-25.)  In that regard, VMI's counsel argued as follows:

First of all, . . . I think the timing of this [proposed assertion of additional claims] is perfectly explainable and it is <u>contemplated by the rules concerning additional infringement contentions that Your Honor had directed us to at the outset of this case</u>.  You will recall that we were asked to, and <u>we did prepare initial [infringement contentions] along the lines of the [Northern District of] California [Patent Local] [R]ules</u>.  <u>The rules contemplate that those [infringement contentions] could be amended based on discovery that takes place in the case, and our amendments are based on discovery that we've had in the case</u>, whether it be documents, as well as inspections, and largely governed by the issue of expert access that we've had only in the last six weeks or so six to eight weeks or so, I think, Your Honor, plus the documents are coming in recently.

(<u>Id.</u> at 25-26 (emphasis added).)

Another of VMI's attorneys thereafter added:

[T]hese [proposed new] claims are . . . not disruptive to the case.  We have . . . a large number of claims in the case.  <u>We have some additional dependant claims and things like that, which we seek to assert based on</u>

---

[7](...continued)
the transcript in this Order refer to the CM/ECF footer page numbers for cited portions of the transcript, rather than to the court reporter's pagination.

[8] From the context, it would appear that by "preliminary motion" Magistrate Judge Eliason referred to VMI's Disclosure of Asserted Claims and Preliminary Infringement Contentions (served in revised form on Siemens on July 13, 2006).

<u>discovery, and I think the rules contemplate that</u>.  The
rules contemplate modifying the infringement contentions
after . . . the [*Markman*] ruling.  If you haven't had
that [*Markman* ruling] yet . . . [you are] giving them an
earlier notice [and] that's what we're seeking to do.

(<u>Id.</u> at 27 (emphasis added).)[9]

After the foregoing argument (in which VMI's counsel clearly
conceded that the Northern District of California Patent Local
Rules governed the amendment of preliminary infringement
contentions to add new infringement claims), Magistrate Judge
Eliason stated that, at that point, VMI had "not added new claims;
discovery's ended -- . . . the matter's ended.  I don't see that
it's [i.e., VMI's proposed addition of new infringement claims] in
front of me.  You know, after the [*Markman*] hearing, . . . you can
do what you think you need to do . . . ."  (<u>Id.</u> at 28-29.)

VMI did not file a response to Siemens's instant Motion (filed
on May 29, 2007) seeking to preclude VMI from adding new
infringement claims (as forecast in VMI's letter of May 23, 2007).
(<u>See</u> Docket Entries dated May 29, 2007, to the present.)  However,
on June 18, 2007, VMI filed a Motion for Clarification of Order or,
in the Alternative, Objections under Rule 72.  (Docket Entry 235.)
In said filing, VMI contended that <u>either</u> Magistrate Judge Eliason
should clarify that his statements at the hearing on May 31, 2007,
do not bar VMI "from amending its infringement contentions to add

---

[9] Said counsel also later suggested that, although fact discovery generally
had ended, the Court had authorized previously-scheduled, but not-yet-held,
depositions by the defendants of the "core inventors" to occur after the close
of fact discovery and that, therefore, any discovery from those witnesses as to
VMI's proposed new infringement claims could occur without extension of existing
deadlines.  (<u>See</u> Docket Entry 410-2 at 29.)

new claims or accused products" <u>or</u> the Court should overrule Magistrate Judge Eliason's oral order to the extent that it barred VMI from taking such action.  (<u>See</u> <u>id.</u> at 2.)

In support of its position in this regard, VMI stated:

> Since serving its contentions [on July 13, 2006], VMI has inspected the accused machines and analyzed documents produced by the defendants concerning the machines' structure and function.  On May 23, 2007, VMI wrote to . . . Siemens [and other defendants] to notify them that VMI's investigation uncovered infringement of new claims not asserted in VMI's preliminary infringement contentions.

> While VMI conducted its analysis of the accused products, [another defendant] and Siemens introduced brand new machines that also fall within VMI's infringement allegations and related discovery requests.

> . . . .

> The Patent Local Rules of the Northern District of California, <u>adopted for this case</u>, permit and in fact encourage amendment of infringement contentions as VMI now contemplates.  Patent L.R. 3-4(a) requires the accused infringers to produce '[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements' of the accused products identified in the patentee's preliminary infringement contentions.  If "the documents produced pursuant to Patent L.R. 3-4 so requires," <u>Patent L.R. 3-6(a)</u> permits the patentee to amend its Infringement Contentions "without leave of court" up to thirty days after service of the Court's Claim Construction Ruling.  In compliance with this rule, VMI notified the defendants of its intention to amend its preliminary infringement contentions based on information learned through the documents produced pursuant to Patent L.R. 3-4.

(<u>Id.</u> at 3-4 (emphasis added).)

Siemens responded in opposition and argued that:

> <u>VMI argues that Patent L.R. 3-6(a) permits it to add claims and newly accused products based on the documents Defendants produced pursuant to Rule 3-4.  This is wrong.</u> Rule 3-6 is far more limited.  "Patent Local Rule 3-6

provides that the plaintiff's Preliminary Infringement Contentions will be deemed to be that party's final contentions except under limited circumstances set forth in the Rule." *LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360, 366 (N.D. Cal 2002). Specifically, Rule 3-6(a) permits modification of the Preliminary Infringement Contentions only with respect to the information required by Patent L.R. 3-1(c) and (d):

> If a party claiming patent infringement believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents produced pursuant to Patent L.R. 3-4 so requires, not later than 30 days after service by the Court of its Claim Construction Ruling, that party may serve 'Final Infringement Contentions' without leave of court that amend its 'Preliminary Infringement Contentions' with respect to the information required by Patent L.R. 3-1(c) and (d).

Patent L.R. 3-6(a). Rule 3-1(c) requires plaintiff to produce a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." (Emphasis added.) Rule 3-1(d) requires the plaintiff to specify "[w]hether each element of each asserted claim is to be literally present or present under the doctrine of equivalents within each Accused Instrumentality."

Specifically *omitted* from the coverage of Rule 3-6 is any right to amend the information required by Rule 3-1(a) — the *claims* — and Rule 3-1(b) — the *accused products.* Accordingly, *LG Elecs* held that Rule 3-6 "does not apply here, as [patentee] seeks to amend the information required by Patent Local Rule 3-1(b)" by accusing new products. 211 F.R.D. at 366. The same is true of attempts to amend the list of infringed claims under Rule 3-1(a). Accordingly, Rule 3-6 allows the plaintiff to amend its contention as to how the accused products infringe, and whether they do so literally, but not to add new claims or new products to the case.

Patent Local Rule 3-7 applies to "amendment or modification of the Preliminary or Final Infringement Contentions . . ., other than as expressly permitted in patent L.R. 3-6," and provides that such amendments "may be made only by order of the Court, which shall be entered only upon a showing of good cause." Accordingly, it is Rule 3-7 that governs VMI's attempt to assert new

-12-

claims and accuse new products.  *LG Elecs.*, *supra*, at 367.  As courts applying the patent local rules have explained, such permission is not granted lightly:

> Although federal courts are generally lenient in allowing parties to amend pleadings, such is not the case with amending preliminary infringement contentions.  The patent rules are designed to avoid 'vexatious shuffling of positions' that could occur if the parties are permitted to freely modify their infringement contentions at any point in the action.

*Berger v. Rossignol Ski Company, Inc.*, 2006 WL 1095914, at *3 (N.D. Cal. 2006) (internal citation omitted).

(Docket Entry 242 at 4-6 (brackets, ellipses, and italics in original) (underlined emphasis added).)[10]

In its Reply, VMI implied for the first time that the Scheduling Order authorized it to add new infringement claims without showing "good cause": "Defendants fail[ed] to take into

---

[10] Siemens's Response also noted that "VMI ha[d] failed to oppose Siemens' [instant Motion seeking to preclude VMI from adding new infringement claims]." (Docket Entry 242 at 3 n.1.)  VMI's Reply did not address that issue.  (See Docket Entry 253.)  In its recent supplemental brief, VMI contended for the first time that its Motion for Clarification of Order or, in the Alternative, Objections under Rule 72 (Docket Entry 235), "in form and substance, constituted an opposition to [Siemens's instant Motion]." (Docket Entry 411 at 7.)  Nothing on the face of said Motion for Clarification would allow a reasonable conclusion that it represented "in form" VMI's response in opposition to Siemens's instant Motion, although, as the summary above reflects, VMI's Motion for Clarification did address some of the issues raised by Siemens's instant Motion.  This Court's Local Rules, however, required that, if VMI opposed Siemens's instant Motion, VMI had to file a response to Siemens's instant Motion and did not permit VMI to forego such a response simply by filing its own motion that addressed overlapping issues.  See M.D.N.C. R. 7.3(f).  Accordingly, notwithstanding VMI's protestation that it "does not simply fail to respond to pending motions" (Docket Entry 411 at 7 n.3), the Court concludes that VMI did just that in connection with Siemens's instant Motion.  Nonetheless, under the circumstances of this case, the Court will not exercise its discretion to grant Siemens's instant Motion simply based on VMI's failure to file a proper response, see M.D.N.C. R. 7.3(k), but instead will address Siemens's instant Motion and the related issues in VMI's Amended Report of Claims to be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 292) on the merits.

account that the Joint Scheduling Report agreed to by the parties, and approved by the Court, states clearly that '[t]he parties should be allowed until one week following the issuance of the Court's claim construction order to request leave to otherwise amend <u>pleadings</u>.'" (Docket Entry 253 at 3 (quoting Docket Entry 54 at 4) (emphasis added).) According to VMI, "[t]he word 'otherwise' in the [Joint Scheduling] Report refers to the prior two sentences, which discuss joining additional parties. Adding new claims is a kind of amendment other than joining an additional party, and so such an amendment fits within the [Joint Scheduling] Report's plain language." (<u>Id.</u> at 3 n.1.) As a result, VMI contended that it "underst[ood] that it w[ould] have until after the issuance of the claim construction order (as provided by the Joint Scheduling Report), to amend its Revised Preliminary Contentions and if necessary its Complaint." (<u>Id.</u> at 5; <u>see also</u> <u>id.</u> ("If the Court clarifies that VMI must show good cause for amending its Revised Preliminary Contentions, VMI respectfully requests fair notice and opportunity to move for leave to amend and to show good cause.").)

Hearing on July 19, 2007 and Related Order

On July 19, 2007, Magistrate Judge Eliason held a hearing, during which he gave the parties the opportunity to address any disputed matter. (<u>See</u> Docket Entry 258 at 3, 34.) Notwithstanding this invitation, VMI failed to mention anything about the addition of new infringement claims, even when: 1) VMI proposed to update its infringement contentions to address whether VMI relied on alleged literal infringement or the doctrine of equivalents (<u>see</u>

<u>id.</u> at 106-07); and 2) the subject of the defendants' pending motion seeking a reduction in the number of VMI's infringement claims (Docket Entry 99) came up (<u>see</u> Docket Entry 258 at 159-67).[11]

During the course of the discussion about reducing the number of VMI's infringement claims, Magistrate Judge Eliason stated:

> If you're going to keep 58 claims, fine. . . . If you're not, then you need to make that decision. . . . I can't tell you to reduce your claims, but . . . there seems to be a large number of them . . . . [A]ll I can say is that . . . I want that factored in [to any proposed order regarding the case-management deadlines pertaining to experts] . . . so you're not wearing out . . . the Defendants' experts, with respect to the claims.

(<u>Id.</u> at 160-61.) After hearing further argument, Magistrate Judge Eliason proposed that, if VMI wished to avoid a substantial delay in the deadline for the submission of reports from the defendants' experts (due to the large volume of infringement claims asserted by VMI), VMI could "tell [the defendants] whether [VMI was] going to reduce the claims or not." (<u>Id.</u> at 162.)

Magistrate Judge Eliason then elaborated:

> If you want to go with the claims, go with them. . . . But I don't want you to be keeping all those claims in and then later on drop them all. Make the decision now, a good-faith decision, you know, as to the best claims you want to go with. Sure, we'd like to have the case

---

[11] Moreover, in discussing other issues, VMI took a position regarding the amendment of pleadings directly contrary to the argument it presented in its Reply in support of its above-discussed Motion for Clarification; specifically, although in said Reply (filed on July 20, 2007) VMI indicated that it understood the Scheduling Order to permit the parties to amend their pleadings (other than to add parties) <u>without</u> showing good cause until one week after the Court ruled on claim construction issues (<u>see</u> Docket Entry 253 at 3), during the hearing on July 19, 2007, VMI's counsel asserted that the time for filing a "motion to amend pleadings to add defenses has long since passed" and that VMI would "in no way waiv[e] the . . . requirements under the rules for good cause to amend past the deadline" (Docket Entry 258 at 69-70).

> whittled down if we could. If you need time to be
> thinking about that in order to do that, . . . take that
> time ahead of time. It's worth it to everybody to do it.
> I don't want you to just go forward with all of them and
> then later on say, well, you weren't really serious about
> them, because that could be a problem.

(Id. at 163-64.) The parties thereafter agreed that VMI would notify the defendants of VMI's "final decision" about reducing the number of its infringement claims by September 17, 2007, and that the deadline for disclosure of expert reports from the defendants would follow on a date agreed to by the parties. (See id. at 164-67.) At no point in this exchange did VMI indicate that it intended to include new infringement claims in its notice to the defendants due on September 17, 2007. (See id. at 159-67.)

Subsequently, Magistrate Judge Eliason entered an order memorializing the rulings made July 19, 2007, including as follows:

> The Court has extended the deadline for opening
> expert reports on issues for which a party bears the
> burden of proof to Monday, October 1, 2007.
>
>     . . . .
>
> Defendants have moved to limit the number of claims
> to be construed at the *Markman* hearing in this matter.
> The Court has determined that the Magistrate Judge lacks
> authority to order Plaintiff to reduce the number of
> claims asserted. Accordingly, the Court orders Plaintiff
> to report by September 17, 2007 the claims that Plaintiff
> will advance at trial.
>
>     . . . .
>
> By the date the opening expert reports are due
> [i.e., October 1, 2007], VMI must serve updated
> Preliminary Infringement Contentions, including
> contentions regarding literal infringement and
> infringement under the doctrine of equivalents of each
> claim element alleged to be infringed . . . .

(Docket Entry 274 at 1-3.)

The Court (per Magistrate Judge Eliason) also denied VMI's Motion for Clarification (Docket Entry 235) on the ground that the Court's statements at the hearing on May 31, 2007, required no clarification. (<u>See</u> Docket Entry dated Sept. 5, 2007.)

<u>VMI's Motion to Amend its Preliminary Infringement<br>Contentions to Assert New Infringement Claims</u>

On September 17, 2007 (consistent with the deadline agreed to by the parties at the hearing on July 19, 2007, and memorialized in a subsequent Order), VMI filed a Report of Claims to be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 285), which it then superseded with its instant Amended Report of Claims to be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 292).[12] In connection with that latter filing, VMI abandoned some of its infringement claims, but also asserted these new infringement claims against Siemens:

> 1) Claims 1-4 and 19-21 of the '807 patent as to the X500 machine;
>
> 2) Claims 6 and 21 of the '211 patent as to the Antares machine; and
>
> 3) Claims 3, 6, 18, and 21 of the '211 patent as to the G60S, G50, and X500 machines.

(<u>See</u> Docket Entry 292-2 at 3.)[13]

---

[12] VMI's Amended Report and Conditional Motion omitted some infringement allegations in the Original Report and Conditional Motion (Docket Entry 285). (<u>See</u> Docket Entry 292 at 1-2.) The parties agree that VMI's original Report and Conditional Motion thus became moot. (<u>See</u> Docket Entry dated Apr. 28, 2011).

[13] VMI also sought to add new infringement claims against other (since-dismissed) defendants, but not against Toshiba. (<u>See</u> Docket Entry 292-2 at 1-5.)

Notwithstanding VMI's prior failure to contest the applicability of the "good cause" standard of the Patent Local Rules of the Northern District of California in response to a prior motion (see Docket Entry 62 at 5), its concession in open court that said Patent Local Rules control the addition of new infringement claims (see Docket Entry 410-2 at 24-27), its prior acknowledgment (in a brief addressing the amendment of asserted claims and infringement contentions) that said Patent Local Rules were "adopted for this case" (Docket Entry 235 at 3), and its argument to this Court (in that same brief) that a specific provision of said Patent Local Rules (i.e., Rule 3-6) expressly authorized VMI's proposed addition of new infringement claims without good cause (see id. at 3-4), in its instant Amended Report and Conditional Motion, VMI contended for the first time that it "[wa]s uncertain as to the extent to which the Northern District of California Local Patent Rules apply in this matter." (Docket Entry 292 at 10 n.8.)[14] As a result, VMI asserted that the Court should not enforce "a portion of another court's local rules" against VMI, but instead should allow VMI to add new infringement claims without good cause. (Id.; see also id. at 13 n.11 ("[T]his Court should not deny VMI the ability to amend for lack of good cause without proper notice of the applicability of the Northern District of California's Local Patent Rules.").)

_____

[14] In making this assertion, VMI did not acknowledge its above-referenced, prior contrary positions. (See Docket Entry 292 at 10 n.8.)

To support its new view that the Patent Local Rules of the
Northern District of California did not apply to the amendment of
its disclosure of asserted claims and infringement contentions, VMI
offered two cryptic arguments:

1) VMI quoted Northern District of California Patent Local
Rule 4-6's statement that "'[s]ubject to the convenience of the
Court's calendar, two weeks following submission of the reply brief
[on claim construction] . . . the Court shall conduct a Claim
Construction Hearing,'" as proof that "the [Northern District of
California Patent] [L]ocal [R]ules do not apply completely" (Docket
Entry 292 at 10 n.8); and

2) VMI generally cited three pages of the transcript of the
Initial Pretrial Conference on May 18, 2006, as evidence that "it
is unclear whether [the Northern District of California Patent]
[L]ocal [R]ules are binding or guiding principles in this case"
(id. (citing Docket Entry 53 at 4-6)).

VMI's first argument in this regard thus appears to assert
that, because the Court did not hold a claim construction hearing
within two weeks of the completion of claim construction briefing,
the Court did not comply with Northern District of California
Patent Local Rule 4-6, thus calling into question the applicability
of any Northern District of California Patent Local Rules to this
proceeding.  In making this contention, VMI failed to address the
fact that:

1) Northern District of California Patent Local Rule 4-6
renders the setting of the claim construction hearing "subject to

the convenience of the Court's calendar" (<u>see</u> Docket Entry 292 at 10 n.8; <u>see also</u> N.D. Cal. Pat. L.R. 4-6); and

2) Northern District of California Patent Local Rule 4-6 pertains not to the disclosure of asserted claims and infringement contentions (a process governed by the rules in Section Three of said Patent Local Rules entitled "Patent Initial Disclosures"), but rather to claim construction proceedings (as reflected by its placement within Section Four of said Patent Local Rules that bears the title "Claim Construction Proceedings") (<u>see</u> Docket Entry 292 at 10 n.8; <u>compare</u> N.D. Cal. Pat. L.R. 3-1 through 3-8 <u>with</u> N.D. Cal. Pat. L.R. 4-1 through 4-6).

Similarly, in citing the transcript of the Initial Pretrial Conference as proof that the Court did not bind the parties to follow the Northern District of California Patent Local Rules in connection with the disclosure of asserted claims and infringement contentions, VMI neglected a material fact. Specifically, VMI failed to mention that, after the Initial Pretrial Conference, the parties filed a Joint Scheduling Report that explicitly adopted the Northern District of California Patent Local Rules regarding the disclosure of asserted claims and infringement contentions (but not claim construction proceedings), which the Court adopted. (<u>See</u> Docket Entry 292 at 10 n.8; <u>see also</u> Docket Entries 54, 55.)

As an alternative to its foregoing arguments, VMI contended that, if "addition of new infringement contentions is to be limited by Northern District of California Local Patent Rules, then leave to add new contentions should nevertheless be granted . . .

[because VMI can satisfy] Northern District of California Local Patent Rule 3-7 [which] provides that amendment of preliminary infringement and invalidity contentions may be made with leave of Court, upon a showing of good cause." (Docket Entry 292 at 10.) However, with one exception (i.e., that Siemens introduced the X500 machine after VMI made its Revised Disclosure on July 13, 2006), VMI's instant Amended Report and Conditional Motion did not explain why it previously failed to present the newly proposed infringement allegations against Siemens. (See id. at 3-7, 10-15.)

In its Response opposing VMI's instant Amended Report and Conditional Motion, Siemens argued that the "good cause" standard from the Northern District of California Patent Local Rules did apply to VMI's proposed addition of new infringement allegations and that VMI had failed to make the required showing. (See Docket Entry 297.) VMI thereafter filed a Reply in which it continued to deny that it had to show good cause for its proposed course of action, but alternatively asserted that good cause nonetheless supported its position. (See Docket Entry 304.) In addition to again referencing the introduction of the X500 machine, said brief included only the following specific matters relevant to its assertion of new infringement allegations against Siemens:

> VMI seeks to assert the '211 patent against two already-accused machines — the Sonoline G60S and the Sonoline G50. VMI obtained evidence pertinent to these amendments during the deposition of [a Siemens witness] on June 6, 2007. VMI also learned during the course of discovery that the products accused of infringing the remaining two claims of the '211 patent also infringe claims 6 and 21, based in part on the June 8, 2007, deposition testimony of [a Siemens witness].

(<u>Id.</u> at 11.)  VMI, however, did not explain why – if it learned the information necessary to assert the new infringement claims against Siemens in June 2007 – it wrote to Siemens on May 23, 2007, to state that it had a basis to assert those new infringement claims against Siemens.  (<u>See</u> <u>id.</u>; <u>see also</u> Docket Entry 220-3.)

<u>Supplemental Filings</u>

After a recent status conference at which VMI abandoned its arguments against application of Northern District of California Patent Local Rule 3-7's "good cause" standard (<u>see</u> Docket Entry 425 at 18-19 ("We're not trying to run from the rules, Your Honor.  We have good cause.")), the Court gave VMI a further opportunity to explain in detail how developments after its filing of its Revised Disclosure on July 13, 2006, justified the addition of new infringement allegations against Siemens (<u>see</u> Docket Entry dated Apr. 28, 2011).  VMI has made that filing (to which it attached the claims chart it served on Siemens on October 26, 2007), Siemens has responded, and VMI has replied.  (Docket Entries 411, 415, 419.)

VMI's supplemental memorandum divides its discussion of its proposed new infringement allegations as follows:

a.   Allegations of infringement of the '807 and '211 patents by the then-newly introduced Acuson X500 machine.

b.   Allegations of infringement of already asserted Claims 3 and 18 of the '211 patent against already accused products Sonoline G50 and Sonoline G60S.

c.   Allegations of infringement of newly asserted dependent Claims 6 and 21 of the '211 patent against

> already accused products (Sonoline Antares, Acuson
> Antares, Sonoline G50, and Sonoline G60S).

(Docket Entry 411 at 9-10 (internal footnote omitted).)

As to the first such category, VMI focused principally on the fact that because "Siemens apparently first launched [the X500] machine in early 2007 . . . VMI could not have accused the X500 machine in [VMI's] initial infringement contentions served in July 2006." (<u>Id.</u> at 13.)[15] VMI also pointed to the fact that, in the portion of its claims chart from October 26, 2007, "relating to the X500 machine, VMI relied primarily on documents produced by Siemens [in April 2007] and also the deposition testimony of Siemens witnesses [given in June 2007]." (<u>Id.</u> at 13-14.) According to VMI, because, on September 17, 2007, "[w]ithin three (3) months after the fact depositions, VMI identified the relevant claims to be asserted [as to the X500 machine], . . . VMI was diligent and acted promptly and in good faith." (<u>Id.</u> at 14.)

Regarding the second, above-listed category, VMI argued that:

> [it] ha[d] good cause to assert Claims 3 and 18 of the
> '211 patent against the Sonoline G50 and Sonoline G60S

---

[15] Siemens has countered that it "had released the X500 product by November 2006." (Docket Entry 415 at 10.) In support of this assertion, it noted that:

1) in VMI's claims chart of October 26, 2007, VMI relied on information about the X500 made publicly-available on a federal government website on October 7, 2006 (<u>id.</u> (citing Docket Entry 412 at 43, 54-55));

2) VMI's "own damages expert included X500 sales from 2006 in his damages calculations" (<u>id.</u> at 12 (citing Docket Entry 416 at 3));

3) the website for the Radiological Society of North America, press releases, and articles from November 2006 all confirm the release of the X500 at that time (<u>id.</u> (citing Docket Entry 415-4 at 2-3, Docket Entry 415-5 at 5, Docket Entry 415-6 at 2-4, Docket Entry 415-7 at 2-4)).

machines . . . [on September 17, 2007, after failing to do so] in its initial contentions [served in July 2006 because it] determined that these machines infringed these claims through a combination of (1) the inspection of the G50 and G60S machines in January 2007; (2) the documents Siemens produced to VMI in early 2007; and (3) the depositions VMI took of Siemens technical personnel in June 2007, all of which information was analyzed and considered by both counsel and VMI's outside experts.

(Id. at 14.) Consistent with its arguments regarding the X500 machine, VMI contended in conclusory fashion that, because – in documenting its basis for its infringement allegations as to the Sonoline G50 and G60S – its claims chart from October 26, 2007, "included citations from documents produced by Siemens from late 2006 through April 2007, information obtained through the inspection of [the Sonoline G50 and G60S] machines conducted by VMI in January 2007, as well as in deposition testimony obtained from several Siemens witnesses in June 2007, . . . VMI was diligent" in asserting these new infringement claims. (Id. at 15-16.)

Finally, as to the third category referenced above, VMI argued that "[w]hen [it] served its initial preliminary infringement contentions in July 2006, it did not have the relevant information to be able to assess possible infringement of Claims 6 and 21 by [the Sonoline Antares, G50, G60S, or the Acuson Antares machines]." (Id. at 16.) According to VMI:

Although some of the information relevant to these particular dependent claims was publicly available, and relied upon in [VMI's claims chart of] October 26, 2007, . . . VMI required other information that could only be obtained through discovery to confirm and support the contentions relating to Claims 6 and 21, as well as the related independent Claims 3 and 18. VMI also continued throughout the relevant time period to work with its

expert witness, Dr. William Walker, to assess the scope and extent of Siemens' infringement.

(Id. at 16-17.)  In this regard, VMI pointed to:

> information contained in documents produced by Siemens from late 2006 through April 2007, information obtained through the inspection of [the Sonoline Antares, G50, G60S, and the Acuson Antares] machines conducted by VMI in January 2007, as well as deposition testimony obtained from Siemens witnesses in June 2007, all of which is cited in the October 26, 2007 [claims chart] as supporting the infringement allegations of Claims 3 and 18, and thus also Claims 6 and 21 (which are dependent claims, meaning they incorporate all of the limitations of the independent claims from which they depend).

(Id. at 17.)

Siemens thereafter responded, inter alia, that:

1) VMI "identifie[d] nothing of substance in its [October 26, 2007] claim charts that was not available from public sources, including Siemens' website, product manuals, and an inspection of the machines" (Docket Entry 415 at 8);

2) "Siemens produced all the documents relied upon by [VMI] for its new infringement contentions — with the exception of the few documents relating to the X500 product [which were produced between April 11 and May 7, 2007] — on or before January 5, 2007" (id. (internal footnote omitted)); and

3) VMI "d[id] not identify a single specific fact it learned at any of th[e] depositions [of Siemens's technical witnesses in June 2007] . . ., two of the three witnesses to which [VMI] refers . . . testified about the Antares, and not the [X500,] G50 or G60[S]" (id. at 16), the witness testimony about the Antares cited in VMI's claims chart of October 26, 2007, "relates generally to

interpolation rather than any [patent] claim limitations . . . and discloses nothing that could not have been determined from the product inspection" (<u>id.</u> at 11), "[a]nd [VMI] d[id] not identify any information from the deposition of [the witness] who actually testified about the G50 and G60[S], beyond that contained in Siemens' extensive production or [VMI's] inspection" (<u>id.</u> at 16).[16]

In sum, Siemens's supplemental response showed that – except as to the X500 – by early January 2007, VMI had all the information it identified as necessary to its assertion of the new infringement claims which it sought to add on September 17, 2007. According to Siemens, VMI thus has "fail[ed] to meet its burden of proving diligence in seeking leave to amend [its Revised Disclosure of July 13, 2006, to add new infringement allegations]." (<u>Id.</u> at 9.)

In its supplemental reply memorandum, VMI provided nothing of substance to contradict Siemens's foregoing analysis of the materials cited in VMI's claims chart of October 26, 2007 (on which VMI had relied as its proof of the "good cause" arguments in its

---

[16] Siemens provided a detailed analysis of the information contained in VMI's claims chart from October 26, 2007, to support these three arguments. (<u>See</u> Docket Entry 415 at 10-16.) For example, Siemens set forth in chart form the production date for every document cited in VMI's claims chart of October 26, 2007. (<u>See</u> <u>id.</u> at 13, 15-16.) Siemens's showing in this regard contradicted VMI's contention that, as to the Sonoline G50 and G60S, its claims chart of October 26, 2007, "included citations from documents produced by Siemens from late 2006 through April 2007" (Docket Entry 411 at 15). (<u>See</u> Docket Entry 415 at 14 ("As these tables show, [VMI's] assertion that its proposed amended contentions included citations from documents produced by Siemens through April 2007 is false." (internal ellipses and quotation marks omitted)).) In its supplemental reply, VMI failed to contest Siemens's position in this regard, to retract the apparently false statement in VMI's initial brief, or to otherwise address this matter. (<u>See</u> Docket Entry 419 at 1-11.)

supplemental memorandum). (<u>See</u> Docket Entry 419 at 1-9.) Instead, VMI pointed to:

1) its receipt of discovery from Siemens in April and May 2007 that "ultimately was not included in VMI's [claims chart of October 26, 2007]" (<u>id.</u> at 3-4); and

2) its assertion that it "was working with its technical expert throughout the period of [fact discovery that ended in June 2007], in order to crystallize [its] infringement theories as ultimately set forth in the [claims chart of October 26, 2007]" (<u>id.</u> at 5).

DISCUSSION

<u>VMI Must Show Good Cause to Amend its Infringement Allegations</u>

As set forth in the Background section, <u>see</u> <u>supra</u>, p. 2, in the Scheduling Order for this case, the Court adopted the parties' request that the Northern District of California Patent Local Rules apply to VMI's "Disclosure of Asserted Claims & Preliminary Infringement Contentions." The United States Court of Appeals for the Federal Circuit has described the relevant portion of said Patent Local Rules as follows:

> [A] party claiming patent infringement . . . must serve preliminary infringement contentions within ten days of the initial case management conference. <u>See</u> U.S. Dist. Ct. N.D. Cal. Patent L.R. 3-1. Among other things, these contentions must specify each claim of each patent that is allegedly infringed, each product that allegedly infringes, and the location in the product where each element of each asserted claim is found. <u>See</u> <u>id.</u> The preliminary contentions generally become the final contentions thirty days after the claim construction ruling unless a party serves final infringement contentions. A party may submit final infringement contentions that differ from the preliminary contentions

without leave of the court within the thirty day period
after the claim construction ruling only if the amending
party believes in good faith that the claim construction
ruling or the documents submitted with the other party's
invalidity contentions require a change. <u>See</u> U.S. Dist.
Ct. N.D. Cal. Patent L.R. 3-6. <u>Outside of this thirty
day period, amendments or modification to the contentions
can only be made "by order of the Court . . . upon a
showing of good cause."</u> <u>See</u> U.S. Dist. Ct. N.D. Cal.
Patent L.R. 3-7.

<u>02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 467 F.3d 1355,
1362-63 (Fed. Cir. 2006) (emphasis added) (second set of ellipses
in original).

These particular Patent Local Rules are "designed specifically
to require parties to crystallize their theories of the case early
in the litigation so as to prevent the shifting sands approach to
claim construction." <u>Id.</u> at 1364 (internal quotation marks
omitted). More specifically, the Patent Local Rules in question:

1) recognize that discovery exists not just to allow the
plaintiff "to develop information to support its claim[, but also]
. . . to allow the defendant to pin down the plaintiff's theories
of liability . . . [and] thus [to] confin[e] discovery and trial
preparation to information that is pertinent to the theories of the
case," <u>id.</u> at 1365; and

2) address the fact that the "latter objective" of pinning
down the plaintiff's theories is undermined by the postponement of
"[a]nswers to [contention] interrogatories . . . until the close of
discovery . . . or [the allowance of] amend[ments] [of contention
interrogatories] as a matter of course during the discovery period
. . . by requiring . . . the plaintiff . . . to provide early

notice of [its] infringement . . . contentions, and to proceed with diligence in amending those contentions," id. at 1365-66.[17]

As this explanation from the Federal Circuit makes clear, all of the rules in Section 3 of the Northern District of California Patent Local Rules (including specifically Patent Local Rules 3-1, 3-6, and 3-7) form an inter-related regimen regulating a plaintiff's assertion of infringement allegations. Accordingly, pursuant to the Scheduling Order to which it agreed, VMI must show "good cause" within the meaning of Northern District of California Patent Local Rule 3-7 to amend its Revised Disclosure of July 13, 2006, to add new infringement allegations. Any other construction of the Scheduling Order would render its terms meaningless. See id. at 1366 (ruling that, absent Patent Local Rule 3-7's good cause requirement, "the contentions requirement [in Patent Local Rule 3-1] would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation").

Moreover, the events documented in the Background section confirm that:

1) from the inception of this case, VMI understood (and acknowledged to the Court) that Patent Local Rule 3-7's good cause standard applied in this case, see supra, pp. 4, 8-10;

2) VMI expressly argued to the Court that the Patent Local Rules in question were "adopted for this case" without any

---

[17] "Since the Northern District of California's local patent rules on amendment of infringement contentions are unique to patent cases and have a close relationship to enforcement of substantive patent law, [their construction is governed by] Federal Circuit law." O2 Micro Int'l, 467 F.3d at 1364-65.

qualification excepting Patent Local Rule 3-7 from that statement, see supra, p. 11;

3) only when Siemens pointed out deficiencies in VMI's attempts to invoke a provision in Patent Local Rule 3-6 that would have allowed VMI to bypass the good cause requirement in Patent Local Rule 3-7, did VMI raise any question about its obligation to show good cause – and then did so not by claiming that the Scheduling Order failed to incorporate Patent Local Rule 3-7, but rather by arguing that, because the Scheduling Order allowed amendments of pleadings after entry of the claim construction order without reference to Federal Rule of Civil Procedure 16(b)(4)'s "good cause" requirement, VMI could amend documents other than pleadings (like its Revised Disclosure of July 13, 2006) without showing good cause, see supra, pp. 11-14;[18]

4) after forsaking an additional opportunity to argue to the Court that the Scheduling Order did not adopt Patent Local Rule 3-7 (and after the Court denied VMI's motion in which it argued that the Scheduling Order allowed amendment of pleadings without good cause and thus allowed amendment of its Revised Disclosure of July 13, 2006, without good cause), see supra, pp. 14-17, VMI raised new unconvincing arguments as support for its belated contention that it never realized Patent Local Rule 3-7 applied in this case, see supra, pp. 17-20; and

---

[18] As noted above, see supra, p. 15 n.11, in arguing other matters before the Court at virtually the same time, VMI took a contrary position about whether the parties had to show "good cause" to amend pleadings.

5) when recently questioned by the Court about its position, VMI disavowed any challenge to the applicability of Patent Local Rule 3-7, see supra, p. 22.

Under these circumstances, VMI must show good cause to support any proposed amendment of its Revised Disclosure of July 13, 2006, to add new infringement allegations.

### Good Cause Exists to Permit VMI's Proposed New Infringement Allegations Only as to the X500 Machine

VMI asserts that "within a reasonable period of time following [its] discovery of information needed to support the infringement contentions relating to [the new infringement allegations it seeks to pursue] . . . VMI reviewed the relevant information and [moved to amend]. Moreover, there is no prejudice to Siemens . . . in permitting VMI's amendment of its preliminary infringement contentions consistent with the additional claims . . . ." (Docket Entry 411 at 10.) "As a result, VMI contends that there is 'good cause' to permit VMI's amended preliminary infringement contentions to include the additional claims identified [in its instant Amended Report and Conditional Motion]." (Id.)

The Federal Circuit has refused to construe Northern District of California Patent Local Rule 3-7's good cause requirement such that "amendments to contentions must be permitted as a matter of course when new information is revealed in discovery . . . ." O2 Micro Int'l, 467 F.3d at 1365. Instead, at a minimum, this standard requires a party seeking to amend preliminary contentions to add new infringement allegations to demonstrate that, with

reasonable diligence, it could not have asserted such new allegations earlier. See id. at 1366 ("[W]e reject [the] argument that 'good cause' must exist for amending [a party's] infringement contentions, without regard to its diligence in doing so, merely because new evidence was revealed during discovery. . . . '[G]ood cause' requires a showing of diligence . . . [and] [t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." (emphasis added)); see also West v. Jewelry Innovations, Inc., No. C07-1812JF(HRL), 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008) (unpublished) ("[A] party's diligence in amending its preliminary [infringement] contentions upon finding new [information on which it bases a proposed amendment] is only one factor to consider; the Court also must address whether the party was diligent in discovering the basis for the proposed amendment."); Integrated Cir. Sys., Inc. v. Realtek Semiconductor Co., Ltd., 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) ("'Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to . . . ensure that litigants put all their cards on the table up front.'" (quoting Atmel Corp. v. Information Storage Devices, Inc., No. C95-1987FMS, 1998 WL 775115, at *2-3 (N.D. Cal. Nov. 5, 1998) (unpublished))).

*VMI Has Not Shown Good Cause for Its New Infringement Allegations as to the Acuson Antares and the Sonoline Antares, G50, and G60S*

In this case, when VMI served its Revised Disclosure on July 13, 2006, it had sufficient information to allege infringement

regarding "claims 1-4, 10, 19-21, and 23 of [the '807 patent by] . . . the Sonoline Antares, the Acuson Antares, the Sonoline G 60S, and the Sonoline G50" (Docket Entry 61-4 at 2) and "claims 1-3, 5, 7, 16-18, 20, 22, and 24-30 of [the '211 patent by] . . . the Sonoline Antares and the Acuson Antares" (id. at 50). VMI, however, did not seek to amend that Revised Disclosure to add new infringement claims based on one of these same two patents (i.e., the '211 patent) against these same four machines (i.e., the Acuson Antares and the Sonoline Antares, G50, and G60S) until September 17, 2007, more than 14 months later. Under the applicable "good cause" standard, VMI must show that, notwithstanding its substantial knowledge about the Acuson Antares and the Sonoline Antares, G50, and G60S as of July 13, 2006 (as reflected by its ability to allege infringement of claims within the '807 and the '211 patents by said machines), VMI could not, through the exercise of reasonable diligence, have presented the additional infringement allegations at issue (as to one of the very same patents against the very same four machines) until September 17, 2007. VMI has failed to make such a showing.

As an initial matter, nowhere in any of its filings made in support of its instant Amended Report and Conditional Motion has VMI sought to explain why, as of July 13, 2006, it had sufficient information about the relationship between the '807 and '211 patents and the Acuson Antares and the Sonoline Antares, G50, and G60S to assert numerous infringement allegations, but lacked the capacity (based on that same body of knowledge and with exertion of

reasonable diligence) to present the additional infringement allegations at issue until September 17, 2007. (See Docket Entries 292, 304, 411, 419.) Instead, as detailed in the Background section, see supra, pp. 18-22, to the extent VMI attempted to satisfy (rather than to avoid) its burden of showing good cause in its initial two filings on this subject, VMI:

1) first offered nothing to explain the addition of these new infringement allegations (see Docket Entry 292 at 3-7, 10-15); and

2) then (in reply) stated in conclusory fashion that it "obtained evidence pertinent to [its] amendments [adding infringement allegations under the '211 patent against the Sonoline G50 and G60S] during the deposition of [a Siemens witness] on June 6, 2007, . . . [and] that [it determined the Acuson Antares and the Sonoline Antares, G50, and G60S] infringe [two more claims under the '211 patent], based in part on the June 8, 2007, deposition testimony of [a Siemens witness]" (Docket Entry 304 at 11).

The detailed analysis of the relevant portions of VMI's supplemental filings set forth in the Background section, see supra, pp. 23-27, similarly confirms that VMI failed (in said filings) to explain why the ability to assert these new infringement allegations against the Acuson Antares and the Sonoline Antares, G50, and G60S eluded VMI from July 13, 2006, to September 17, 2007. Although (in said filings) VMI generally referenced its reliance on inspections of said machines in January 2007, Siemens's production of documents in "early 2007," and depositions in June 2007 (see Docket Entry 411 at 14, 17), as well

-34-

as its expenditure of time reviewing other documents on which it ultimately did not rely and consulting with its "technical expert" (see Docket Entry 419 at 3-5), VMI did not describe with any specificity why – prior to such events – it could make other infringement allegations regarding the same machines (including as to the same patent) on July 13, 2006, but could not assert these additional infringement allegations until September 17, 2007. (See Docket Entry 411 at 14-17; Docket Entry 419 at 5-9.)[19] Nor did VMI offer a sufficient showing that it exercised reasonable diligence before and soon after July 13, 2006, to gather any information it needed (e.g., did VMI seek to inspect these four machines before July 13, 2006; if so, what response did it get; if not, why not).[20]

Further, even if – by exercising reasonable diligence – VMI could not have asserted its new infringement allegations under the '211 patent against the Acuson Antares and the Sonoline Antares, G50, and G60S, until early January 2007 (when it inspected said machines and received all of the documents on which it relied to support said allegations), VMI has failed to demonstrate that it acted with reasonable diligence by waiting to present those new infringement allegations on September 17, 2007 (well after the

_____

[19] For example, VMI made numerous infringement allegations regarding the machines in question on July 13, 2006, six months before it inspected said machines in January 2007; yet, VMI never attempted to explain why it could not present its proposed new infringement allegations until September 17, 2007, eight months after those inspections.

[20] The Federal Circuit has considered a plaintiff's efforts to obtain voluntary access to suspect machines a significant factor in other contexts. See Judin v. United States, 110 F.3d 780, 784 (Fed. Cir. 1997).

close of fact discovery).[21]  In other words, the Court concludes
that the eight-month delay between early January 2007 (when VMI's
claims chart of October 26, 2007, reflects VMI had the information
it needed to present the infringement allegations at issue) and
September 17, 2007 (when VMI filed the instant Amended Report and
Conditional Motion seeking leave to add said infringement
allegations) exceeds the bounds of reasonable diligence.

In reaching this conclusion, the Court again looks to the
words of the Federal Circuit:

> [T]he district court's finding of a lack of diligence by
> O2 Micro was not unreasonable or arbitrary.  O2 Micro had
> reason to know of the open lamp theory as early as March
> 2002 . . . .  Even accepting O2 Micro's contention that
> it could not know how the open lamp pin operated until

---

[21] As documented in the Background section, see supra, pp. 25-26 & n.16,
VMI has not shown that it relied on any substantive information it received after
early January 2007, to justify its new infringement allegations against these
four machines.  In this regard, VMI has not demonstrated that the depositions in
June 2007 (to which VMI's filings cursorily adverted) provided any new
information necessary to its assertion of the infringement allegations at issue.
Further, VMI has not explained why – if VMI could not have presented these
infringement allegations until after the depositions in June 2007 – VMI stated
in May 2007 that it "became aware of these additional instances of infringement
through analysis of Siemens' document production and inspection of Siemens'
accused products" (Docket Entry 220-3 at 2).  Nor has VMI cited any authority for
its novel argument that the Court should evaluate whether VMI moved with
reasonable diligence in seeking leave to amend not from the point at which VMI
had all the material information it actually needed to assert new infringement
allegations, but rather from the final date at which VMI obtained any discovery
from Siemens (even if VMI's own filings show it did not rely on that later-
discovered information to support its new infringement allegations).  (See Docket
Entry 419 at 5-9.)  In the absence of such authority, the Court declines to adopt
that view because it would appear to undermine the purposes of the relevant
Northern District of California Patent Local Rules as authoritatively construed
by the Federal Circuit, see generally O2 Micro Int'l, 467 F.3d at 1364-66, in
that it would allow a litigant to delay identification of its infringement
theories until the end of discovery.  Finally, the Federal Circuit has held that
generalized statements by a party attributing its delay in moving to amend
infringement contentions to its need to consult with experts carry no weight in
the "good cause" analysis.  See id. at 1367.

the Moyer deposition in late February 2003 and focusing on the period after this deposition, as the district court did, O2 Micro waited <u>almost three months</u>, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend. . . . It is certainly possible that time was required after the Moyer deposition to sufficiently develop the open lamp theory, but O2 Micro <u>failed to establish that it required three months to do so</u>.

<u>O2 Micro Int'l</u>, 467 F.3d at 1367 (emphasis added).

Similarly, in this case, despite multiple opportunities, VMI "failed to establish that it required" eight months after the product inspections and document production in January 2007 to seek leave to add the new infringement allegations at issue. Instead, VMI's own writings confirm that, in May 2007, VMI took the position that (as a result of the product inspections and document production in January 2007) it had a basis to present these new infringement allegations. (Docket Entry 220-3.) Further, (as detailed in the Background section, <u>see</u> <u>supra</u>, pp. 8-17 & n.11) the record indicates that VMI did not wait to file the instant Amended Report and Conditional Motion for another four months (after May 2007) for want of information about the four previously-accused machines, but rather for tactical reasons.

Specifically, at the hearing on May 31, 2007, when the subject of VMI's threat to add new infringement allegations came up, Magistrate Judge Eliason expressed skepticism about any expansion of this already complex case. Thereafter, rather than moving for leave to amend (or even responding directly to Siemens's instant Motion seeking to preclude VMI's addition of new infringement allegations), VMI filed a Motion for Clarification in which it

sought an advisory endorsement of its right to add new infringement allegations (which the Court summarily denied). Then, after a hearing at which it said nothing about adding new infringement allegations, VMI folded its instant proposal to add new infringement allegations into a filing that the Court had directed VMI to make for a different purpose, i.e., to advise the defendants of any existing infringement allegations that VMI would drop before the expert report and deposition phase of the case proceeded. These circumstances strongly support an inference that VMI chose September 17, 2007, as the date on which it would seek to add these new infringement allegations not because that was the first date on which it could do so, but because it believed that was the most opportune date to do so.[22] Permitting the addition of these new infringement allegations under such circumstances would make a mockery of the good cause standard.[23]

---

[22] For example, by "packaging" its proposed addition of new infringement allegations with a reduction of its existing infringement allegations, VMI could counter arguments that the proposed addition would make the case more unwieldy.

[23] The Federal Circuit has made it clear that, where (as here) a litigant fails to show that it could not, through the exercise of reasonable diligence, have presented its infringement allegations sooner than it did, a court may find good cause lacking without considering anything else. See O2 Micro Int'l, 467 F.3d at 1386 ("Having concluded that the district court could properly conclude that [the plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [the defendant]."); accord MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp., No. C01-4925SBA, 2004 WL 5363616, at *5 (N.D. Cal. Mar. 2, 2004) (unpublished) ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." (internal citation omitted)). The Court therefore will not address either the alleged lack of prejudice to Siemens or any alleged prejudice to VMI. To the extent VMI argues that such
(continued...)

*VMI Has Shown Good Cause for Its New*
*Infringement Allegations as to the X500*

Because Siemens released the X500 in late 2006, <u>see</u> <u>supra</u>, p. 23 n.15, VMI obviously could not have included any infringement allegations as to the X500 in VMI's Revised Disclosure of July 13, 2006. That fact immediately distinguishes VMI's request to amend said Revised Disclosure to add its proposed infringement allegations under the '211 and '807 patents against the X500 from its above-discussed request to add new infringement allegations as to the Acuson Antares and the Sonoline Antares, G50, and G60S, <u>see</u> <u>supra</u>, pp. 32-38. Moreover, whereas VMI already had substantial knowledge about the latter four machines as of July 13, 2006 (as reflected by its assertion of numerous infringement allegations as to them on that date, <u>see</u> <u>supra</u>, pp. 32-33), VMI could only begin amassing such a base of knowledge about the X500 in late 2006.

Further, Siemens concedes that it produced documents on which VMI relied in support of its infringement allegations against the X500 as late as May 2007, <u>see</u> <u>supra</u>, p. 25; in contrast, the record reflects that Siemens produced the last of the documents on which VMI relied to assert its new infringement allegations against the Acuson Antares and the Sonoline Antares, G50, and G60S in early January 2007, <u>see</u> <u>supra</u>, pp. 25, 35-36 & n.21. Finally (as documented in the Background section, <u>see</u> <u>supra</u>, pp. 6-7), although

---

[23](...continued)
considerations constitute matters co-equal to the issue of reasonable diligence based on two decisions from the Eastern District of Texas (<u>see</u> Docket Entry 411 at 12), the Court cannot square such reasoning with the Federal Circuit's foregoing, controlling ruling on point.

VMI's letter to Siemens on May 23, 2007, made clear that VMI then claimed to have a definitive basis to assert new infringement allegations as to the four, previously-accused machines, said letter expressed a need to review additional documentation and to inspect the X500 before VMI could present infringement allegations against said, newly-released machine.

The question then becomes whether VMI failed to act with reasonable diligence because it did not present its infringement allegations as to the X500 at some point after May 23, 2007, but before September 17, 2007. For reasons discussed above, see supra, pp. 37-38 & n.22, VMI's decision to wrap its infringement allegations as to the X500 into a filing ordered for a different purpose might lead a reasonable observer to answer this query affirmatively. The Court, however, chooses to infer from the record that, notwithstanding any tactical motive VMI had to defer its presentation of these infringement allegations until September 17, 2007, VMI also legitimately needed the nearly four months from May 23, 2007, to September 17, 2007, to formulate its infringement allegations against the X500. In this regard, the Court gives substantial weight to the fact that, as of May 2007, VMI had not had a lengthy period of time to develop its base of technical knowledge about the X500 (because Siemens only released it in late 2006). VMI thus reasonably might have required a substantial amount of time to make sense of the information it received about the X500 around that time. As a result, the Court finds that VMI

acted with reasonable diligence in presenting its infringement allegations regarding the X500.

In light of previously-cited authority from the Federal Circuit and the Northern District of California, <u>see</u> <u>supra</u>, pp. 38-39. n.23, the Court nonetheless could find a lack of good cause to permit VMI's proposed amendment based on prejudice to Siemens. On this point, Siemens has alleged generally that, because VMI presented its infringement allegations as to the X500 after the close of fact discovery, Siemens lost the opportunity to conduct discovery about said allegations; however, Siemens has identified no specific discovery it would have sought. (<u>See</u> Docket Entry 415 at 17-18.) Moreover, at the recent status conference, Siemens's counsel candidly (and to his credit) acknowledged that the Court could mitigate possible prejudice to Siemens by employing various case management techniques. (<u>See</u> Docket Entry 425 at 40 ("Certainly we're open to however the Court would like to handle the X500 product.").)[24] Under these circumstances, the Court finds good cause to permit VMI to add its proposed infringement allegations as to the X500.

---

[24] For example, if the case proceeded to trial first only on matters related to the originally-accused machines (an option consistent with the presiding Senior United States District Judge's view that the jury should receive the case in manageable segments (<u>see</u> Docket Entry 425 at 4-5)), Siemens's counsel agreed that the jury's verdict could narrow the issues that the Court would have to submit to a jury in a subsequent trial related to the X500. (<u>See</u> <u>id.</u> at 34-35.) Moreover, the Court could allow limited, necessary discovery as to specific matters related to the X500 before any such subsequent trial.

<u>CONCLUSION</u>

In this case, VMI must show good cause within the meaning of Northern District of California Patent Local Rule 3-7 to amend its Revised Disclosure of July 13, 2006, to add new infringement allegations. Such good cause exists to allow VMI to add its proposed infringement allegations as to the X500 machine, but not as to Siemens's four machines against which VMI already had lodged other infringement allegations.

**IT IS THEREFORE ORDERED** that Siemens' Emergency Motion to Preclude VMI from Adding New Infringement Contentions (Docket Entry 219) and VMI's Amended Report of Claims to be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 292) are each **GRANTED IN PART** and **DENIED IN PART**, in that the Court will allow VMI to add the proposed infringement allegations regarding the X500 machine, but will preclude VMI from adding any new infringement allegations as to the Acuson Antares, the Sonoline Antares, the Sonoline G50, and the Sonoline G60S.

    /s/ L. Patrick Auld        
**L. Patrick Auld**
**United States Magistrate Judge**

June 9, 2011