**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


VOLUMETRICS MEDICAL IMAGING, LLC,  )
                                       )
               Plaintiff,    )
                                       )
              v.          )       1:05CV955
                                       )
TOSHIBA AMERICA MEDICAL SYSTEMS,  )
INC. and SIEMENS MEDICAL SOLUTIONS )
USA, INC.,                       )
                                       )
              Defendants.   )


<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court pursuant to two separate Motions to Seal filed by Plaintiff Volumetrics Medical Imaging, LLC ("VMI") and by Defendant Siemens Medical Solutions USA, Inc. ("Siemens"), respectively. (Docket Entries 413, 417.) For the reasons that follow, the Court will deny each Motion to Seal, but with leave to re-file in amended form.

<u>BACKGROUND</u>

VMI brought the instant patent infringement action against Siemens, Toshiba America Medical Systems, Inc., and other entities that have since entered settlements that resulted in their dismissals as defendants. (<u>See</u> Docket Entries 1, 262, 360, 392.)[1] The underlying patents "concern diagnostic ultrasound machines and associated methods for acquiring and displaying images of the human body, in real time and in both two and three dimensions." (Docket Entry 262, ¶ 1.) Allegedly, "[t]hese technologies represent a significant advance in the field of diagnostic imaging, as they

---

[1] In light of those settlements, the Court has included only the names of the remaining defendants in the caption for this Order.

permit physicians to view the human body with a degree of spatial detail and clarity never before achieved by any other form of imaging." (_Id._)

The Court (per United States Magistrate Judge Russell A. Eliason) entered a Stipulated Protective Order and a Supplemental Protective Order that allowed the parties to designate materials as confidential within the meaning of Federal Rule of Civil Procedure 26(c) and to limit the disclosure of such designated materials when produced in discovery. (_See_ Docket Entries 73, 74.) The Supplemental Protective Order directed the parties:

1) to seek approval from the Court if they wished to file material with the Court under seal (Docket Entry 74 at 3);

2) to minimize the amount of material that they seek to have filed under seal (including by redacting documents, rather than by seeking to seal entire documents) (_id._ at 2-3); and

3) to include with any motion to seal a report about efforts to have the supplier of materials for which sealed filing is sought withdraw any confidentiality designations, as well as a showing sufficient to satisfy the test for sealing documents adopted by the United States Court of Appeals for the Fourth Circuit (_id._ at 2-4).

VMI now has moved to file under seal – in connection with a supplemental memorandum (Docket Entry 411) in support of VMI's Amended Report of Claims to Be Advanced at Trial and Conditional Motion for Leave to Amend Preliminary Infringement Contentions (Docket Entry 292) – a 59-page claims chart VMI prepared and served on Siemens (and other Defendants) on October 26, 2007 (Docket Entry

412).  (Docket Entry 413.)  According to VMI, said claims chart "contains excerpts and citations to information designated as highly confidential and proprietary by Defendant Siemens." (<u>Id.</u> at 2.)  VMI's Motion to Seal does not explain why the Court must seal the entire claims chart (i.e., why redaction of certain parts of the claims chart would not suffice to protect any legitimate confidentiality interests).  (<u>See</u> <u>id.</u> at 1-3.)  Nor does said Motion to Seal outline any efforts VMI made to have Siemens withdraw any confidentiality designations.  (<u>See</u> <u>id.</u>)  Finally, although VMI's Motion to Seal makes reference to Fourth Circuit authority regarding sealing considerations and generally argues that grounds for sealing exist, it also states that "only Defendant Siemens is in a position to explain the justification for sealing the underlying information." (<u>Id.</u> at 2-3.)

Siemens has moved to seal Exhibits B and D (Docket Entries 416, 416-1) to its supplemental memorandum (Docket Entry 415) filed in opposition to VMI's above-cited Amended Report and Conditional Motion (Docket Entry 292).  (Docket Entry 417.)  Said Exhibit B consists of a one-page chart from the report of one of VMI's expert witnesses that sets out certain of Siemens's sales figures. (Docket Entry 416 at 2-3.)  Said Exhibit D contains three pages from the transcript of the deposition of one of VMI's expert witnesses in which said witness discusses Siemens's products. (Docket Entry 416-1 at 2-4.)  Siemens's four-sentence Motion to Seal states that "[t]hese exhibits contain Siemens' highly confidential information, including confidential Siemens financial

information and deposition testimony regarding confidential aspects of the accused products." (Docket Entry 417 at 1.)  Said Motion to Seal does not discuss why the Court must seal the entire exhibits in question.  (<u>See</u> <u>id.</u>)  It also fails to set out, much less to apply to the circumstances of this case, any pertinent authority regarding the sealing of documents filed with the Court.  (<u>See</u> <u>id.</u>)

## DISCUSSION

Under the Federal Rules of Civil Procedure ("the Rules"), "[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Id.</u>  Such "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."  <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34 (1984).

"The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach."  <u>Id.</u> at 30.  "Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery."  <u>Id.</u> at 35.  "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties."  <u>Id.</u> at 30.  <u>See also</u> <u>id.</u> at 35 (noting that discovery "may seriously implicate privacy interests of litigants and third

-4-

parties . . . [because] [t]he Rules do not distinguish between public and private information").

"Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." <u>Id.</u> at 30. Said provision states in relevant part that:

> The court may, for <u>good cause</u>, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A)  forbidding the disclosure or discovery;
>
>     . . . .
>
> (D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
>     . . . .
>
> (F)  requiring that a deposition be sealed and opened only on court order;
>
> (G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and
>
> (H)  requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c) (emphasis added).[2]

Given the intrusive nature of the discovery process, "[i]t is not surprising, therefore, that issuance of protective orders in civil litigation has become almost routine." <u>In re Grand Jury</u>

---

[2] "Although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." <u>Seattle Times</u>, 467 U.S. at 35 n.21.

<u>Subpoena</u>, 836 F.2d 1468, 1477 (4th Cir. 1988).[3]  Often, as in this case, rather than seeking protective orders each time the need arises, "parties agree[] to a 'blanket' protective order that permit[s] them to designate documents containing confidential business information." <u>Longman v. Food Lion, Inc.</u>, 186 F.R.D. 331, 333 (M.D.N.C. 1999).  <u>See also</u> <u>Factory Mut. Ins. Co. v. Insteel Indus., Inc.</u>, 212 F.R.D. 301, 303-04 (M.D.N.C. 2002) (describing "'blanket' protective order [as one that] 'permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information'" (quoting <u>Bayer AG and Miles, Inc. v. Barr Labs., Inc.</u>, 162 F.R.D. 456, 463-64 (S.D.N.Y. 1995)); <u>Parkway Gallery Furniture, Inc. v. Kittinger/ Pennsylvania House Group, Inc.</u>, 121 F.R.D. 264, 267-68 (M.D.N.C. 1988) (noting that "[b]lanket or umbrella protective orders are becoming increasingly common as large scale litigation involves more massive document exchanges").

As in this case, courts regularly enter such orders "based on a general 'good cause' determination." <u>Longman</u>, 186 F.R.D. at 333. <u>See also</u> <u>Parkway Gallery</u>, 121 F.R.D. at 268 (observing that "showing of good cause to believe that discovery will involve confidential or protected information . . . may be done on a generalized as opposed to a document-by-document basis").  This

---

[3] The Fourth Circuit has found no fault with this development, but instead has recognized that protective orders "aid the civil courts in facilitating resolution of private disputes." <u>In re Grand Jury Subpoena</u>, 836 F.2d at 1472. <u>See</u> <u>also</u> <u>In re Krynicki</u>, 983 F.2d 74, 75 (7th Cir. 1992) ("Protective orders entered during discovery in civil cases . . . promote[] disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited . . . .").

Court, per now-Chief Judge James A. Beaty, Jr., has found that in cases, such as this one, "involv[ing] hundreds of documents containing confidential business information that Defendants feared could be used by Defendants' competitors to gain a business advantage," an agreed-upon, blanket protective order "arrangement [i]s essential to the efficient functioning of the discovery process . . . ." <u>Longman</u>, 186 F.R.D. at 333.

However, when (as in this case) parties seek to file material subject to a blanket protective order with the Court, additional legal complications arise. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." <u>Landmark Communications, Inc. v. Virginia</u>, 435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589, 597 (1978). <u>See also</u> <u>Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.</u>, 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."); <u>In re Krynicki</u>, 983 F.2d 74, 75 (7th Cir. 1992) ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the

judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.").[4]

"The right of public access to documents or materials filed in a district court derives from two independent sources:  the common law and the First Amendment." Virginia Dept. of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004).  "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted).  See also Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249 (4th Cir. 1988) (ruling that First Amendment access right applies to summary judgment motion attachments).  "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." Virginia Dept. of State Police, 386 F.3d at 575 (internal citations and quotation marks omitted).  As a result, "different levels of protection may attach to the various records and documents involved in [a] case." Stone, 855 F.2d at 180.[5]

---

[4] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases.  See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

[5] "The common law presumption of access may be overcome if competing interests outweigh the interest in access . . . .  Where the First Amendment guarantees access, on the other hand, access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored
(continued...)

The distinction between constitutional and common law access only becomes relevant, however, if the materials at issue actually constitute "judicial documents and records," Stone, 855 F.2d at 180. In this regard, the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v.

    [5](...continued)
to serve that interest." Stone, 855 F.2d at 180 (emphasis added). The United States Supreme Court has identified the following examples of "competing interests" that courts have found sufficient to overcome the common law right of access: 1) the interest in "insur[ing] that [court] records are not used to gratify private spite or promote public scandal [such as] through the publication of the painful and sometimes disgusting details of a divorce case"; 2) the interest in precluding the use of court "files to serve as reservoirs of libelous statements for press consumption"; and 3) the interest in preventing court files from becoming "sources of business information that might harm a litigant's competitive standing." Nixon, 435 U.S. at 598. Although the common-law access balance thus clearly accounts for interests associated with non-governmental litigants and/or third-parties, it is not clear how such interests fit into the First Amendment access analysis, given that test's use of the term "governmental interest." In other words, in the context of a civil case involving non-governmental litigants and/or third-parties, how does one define or discern a "governmental interest"? Does the government have an interest in the vindication of an individual's right to personal privacy or a business's right to freedom from unfair competitive disadvantage? Some courts have addressed this conundrum by substituting the notion of "higher value" for "governmental interest" in such contexts. See Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009) (discussing cases that cited right to privacy, property right in trade secrets, privilege against disclosure of attorney-client communications, and duties created by contract as "private" interests that might overcome First Amendment right of access). In at least two decisions (one published, one not), the Fourth Circuit has endorsed the position that a private business's interests can overcome both the common law and the First Amendment rights of access without addressing this "governmental interest" question. See Columbus-America, 203 F.3d at 303 (reversing order "unsealing the list of the inventory of the recovered treasure" awarded to litigant because "value of the inventory may be damaged by premature release of the inventory"); Woven Elec. Corp. v. Advance Group, Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. May 6, 1991) (unpublished) (ruling that district court could have closed courtroom and could seal record to protect trade secrets).

Amodeo, 44 F.3d 141, 145 (2d Cir. 1995), in concluding "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights"). Accord United States v. Blowers, Nos. 3:05CR93-V, 3:02CR93-V, 2005 WL 3830634, at *3 (W.D.N.C. Oct. 17, 2005) (Tilley, C.J.) ("Although the definition of the term 'judicial documents' is not entirely settled, 'there appears to be agreement that it does not arise from the mere filing of papers or documents, but only those used, submitted, or relied upon by the court in making its decision.'" (quoting Smithkline Beecham Corp. v. Synthon Pharm., Ltd., 210 F.R.D. 163, 167 (M.D.N.C. 2002))). Accordingly, in any given case, some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Virginia Dept. of State Police, 386 F.3d at 576 (internal citations and quotation marks omitted). See also Moussaoui, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine,

-10-

for each document, the source of the right of access (if any such right exists).  As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part.  The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)).  Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; <u>it must consider less drastic alternatives to sealing</u>; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.  Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

<u>Virginia Dept. of State Police</u>, 386 F.3d at 576 (internal citation omitted) (emphasis added).[6]

The mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable sealing regimen.  <u>See, e.g.</u>, <u>Walhonde Tools, Inc. v. Allegheny Energy, Inc.</u>, Civil Action No. 2:06-0537, 2008 WL 4509365, at *1-2 (S.D.W. Va. Sept. 30, 2008) (applying <u>Virginia Dept. of State Police</u>/<u>Stone</u>/<u>Rushford</u> test in denying plaintiffs' unopposed motion "requesting leave to file under seal six exhibits attached to their motion for summary judgment . . . [where] plaintiffs assert[ed]

---

[6] The docketing of a motion to seal can satisfy the "public notice" element of the "procedural" portion of the Fourth Circuit's sealing standard.  <u>See</u> <u>Stone</u>, 855 F.2d at 181.

that the documents at issue have been designated as confidential pursuant to protective orders"); Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone" (internal brackets, ellipses, and quotation marks omitted)).

As to the level of substantive protection due to the documents at issue in this case, the Court notes that significant authority indicates that "material filed with discovery motions is not subject to the common-law right of access." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001). Accord Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."). Other courts have gone further and declined to apply common-law right of access and/or First Amendment analysis to discovery material attached to any "nondispositive motion" (and instead required only a showing sufficient to trigger protection under Rule 26(c)). See, e.g., Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood

cause' is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."). Still other courts have drawn the line of demarcation as to the common law right of access between discovery motions and other nondispositive, pretrial motions.  See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their supporting documents.").  It does not appear that the Fourth Circuit has made clear its position on this subject, but it has stated "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights."  In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4 (emphasis added).

In this case, the respective Motions to Seal by VMI and Siemens do not clearly indicate what level of scrutiny (i.e., Rule 26(c)'s "good cause" requirement, the "competing" interest test arising under the common-law right of access, or the First Amendment's "compelling" interest standard) the Court should apply to the exhibits in question.[7]  In other words, what protections do VMI and Siemens contend attach to documents filed in connection with a nondispositive, pretrial motion that adjudicates more than simply a discovery dispute?  Further, both Motions to Seal fail to provide sufficient analysis to assist the Court in determining if

---

[7] Contrary to the Court's Local Rules, see M.D.N.C. R. 7.3(a) and (j), both VMI and Siemens failed to file a brief with their respective Motions to Seal.

the materials in question merit protection under whatever standard does apply. In addition, neither Motion to Seal complies with the Supplemental Protective Order's directive that a litigant moving to seal explain why limited redactions (rather than wholesale sealing) would insufficiently protect any legitimate confidentiality need.[8] Finally, VMI has failed to comply with the admonition in the Supplemental Protective Order to report on its efforts to get Siemens to withdraw confidentiality designations as to the material within VMI's claims chart.

<u>CONCLUSION</u>

The Motions to Seal by VMI and Siemens fail to provide a sufficient basis for the Court to grant the relief requested.

**IT IS THEREFORE ORDERED** that VMI's Motion to Seal (Docket Entry 413) and Siemens's Motion to Seal (Docket Entry 417) are **DENIED**, but without prejudice to the re-filing of amended motions to seal on or before June 24, 2011, that address the matters outlined in this Memorandum Opinion and Order. Siemens shall cooperate with VMI's efforts to prepare any such amended motion that seeks sealing of VMI's filing based on Siemens's confidentiality designations. Indeed, Siemens should consider filing a joint motion with VMI as to such matters. Given the nature of the disposition of the instant Motions to Seal (i.e., denial with leave to re-file), the underlying documents which VMI and Siemens sought to have the Court seal (Docket Entries 412, 416,

---

[8] Only with such input from the parties can the Court comply with the Fourth Circuit's above-referenced procedural requirements for sealing.

416-1) shall remain sealed at this time.  However, if VMI and/or
Siemens fails to file an amended motion to seal by June 24, 2011,
the Court will order appropriate unsealing.

      /s/ L. Patrick Auld     
**L. Patrick Auld**
**United States Magistrate Judge**

June 10, 2011