**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| VOLUMETRICS MEDICAL IMAGING, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:05CV955 |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. and SIEMENS MEDICAL SOLUTIONS USA, INC. | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before this Court on a Motion to Preclude
(Docket Entry 272) filed by Defendant Siemens Medical Systems, Inc.
("Siemens"), requesting that the Court prohibit Volumetrics Medical
Imaging, L.L.C. ("VMI") from arguing at trial that any of VMI's
machines embody any claim of United States Patent Numbers 5,546,807
("'807") and 6,276,211 ("'211"). For the reasons that follow, the
Court will grant the instant Motion.

**I. BACKGROUND**

VMI filed this patent infringement action "concern[ing]
diagnostic ultrasound machines and associated methods for acquiring
and displaying images of the human body, in real time and in both
two and three dimensions." (Docket Entry 262, ¶ 1.) Allegedly,
"[t]hese technologies represent a significant advance in the field
of diagnostic imaging, as they permit physicians to view the human
body with a degree of spatial detail and clarity never before
achieved by any other form of imaging." (Id.)

On July 19, 2007, this Court, per United States Magistrate Judge Russell A. Eliason, held a hearing to discuss various discovery issues, including Siemens' then-pending motion to compel interrogatory responses (Docket Entry 137). (Docket Entry 258.) During that hearing, Magistrate Judge Eliason issued a variety of orders regarding discovery, including an order that required VMI to respond to Interrogatory No. 14 by producing certain information in a claims chart (if it wished to offer certain evidence at trial). (Id. at 118-38.)[1] In response to that order, VMI provided Siemens with a claims chart. (See Docket Entry 273-3.) Siemens promptly filed the instant Motion contending that VMI's claims chart failed to comply with Magistrate Judge Eliason's directives. (Docket Entry 272.) VMI subsequently served Siemens with a supplemental claims chart. (See Docket Entry 284-1; Docket Entry 284-2.)

With its instant Motion, Siemens asks the Court to prevent VMI "from arguing that any of [VMI's] products embody" either the '807 or '211 patents. (Docket Entry 272 at 1.) According to Siemens, VMI did not obey Magistrate Judge Eliason's directive that VMI had to provide certain information in response to Siemens' Interrogatory No. 14. (Id.) As to that interrogatory, Magistrate Judge Eliason ordered that, "if VMI intend[ed] to offer any evidence at trial regarding an embodiment of any of the patents-in-suit by a VMI machine, then VMI must . . . provide an identification and description in a claim chart (including

---

[1] Magistrate Judge Eliason later entered a written order memorializing his oral rulings. (See Docket Entry 274.)

references to applicable production numbers of VMI's production or attach the documents, or in some way make identification of such documents clear and accessible) of <u>how and where</u> each patent claim limitation is found in each such version of the VMI machine." (Docket Entry 274 at 4 (emphasis added); <u>accord</u> Docket Entry 258 at 130, 133, 138.)

Siemens's instant Motion asserts that VMI failed to satisfy this obligation. (Docket Entry 273 at 5-6.) Further, Siemens has argued that VMI did not provide Siemens with source code information, which Siemens asserts Magistrate Judge Eliason's order required. (<u>Id.</u> at 6-7.) VMI responded that it contests the instant Motion only with respect to Claim 1 of both the '807 and the '211 patents (Docket Entry 284 at 3), because VMI allegedly complied with the Court's directives as to those claims (<u>id.</u> at 3-4). Additionally, VMI has characterized Siemens' source code argument as a "red herring," on the grounds that such matters have no bearing on whether VMI's machines embody its patents and that Siemens has misrepresented VMI's production efforts. (<u>Id.</u> at 4.)

In the discussion that follows, the Court first sets out the standard for a motion to preclude. Next, because Magistrate Judge Eliason addressed the relevant issues at the hearing on July 19, 2007, the Court provides some further details about that hearing. Then, after considering the parties' arguments, the Court concludes that VMI failed to comply with the Court's directives. Finally, the Court explains why preclusion represents the proper sanction for VMI's non-compliance.

## II. DISCUSSION

### A. Standard for Motion to Preclude

A court may sanction a party for failing to comply with a discovery order and such sanctions may include the preclusion of matters from evidence. <u>See</u> Fed. R. Civ. P. 37(b)(2)(A). Specifically:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> . . . .
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . .

Fed. R. Civ. P. 37(b)(2)(A) (emphasis in original).

A district court has discretion to apply sanctions under Rule 37. <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976). However, a district court must refrain from imposing sanctions "when it has been established that failure to comply has been due to inability, and not wilfulness, bad faith, or any fault of the non-complying party." <u>Wilson v. Volkswagen of Am., Inc.</u>, 561 F.2d 494, 503 (4th Cir. 1977) (internal quotation marks and brackets omitted).[2] Moreover, the United States Court of Appeals for the Fourth Circuit requires a district court to consider four factors to determine what sanctions to impose under Rule 37(b)(2):

---

[2] "A decision to sanction a litigant pursuant to Fed. R. Civ. P. 37 is one that is not unique to patent law and [courts handling patent cases] therefore apply regional circuit law to that issue." <u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 290 F.3d 1364, 1370 (Fed. Cir. 2002) (internal citations omitted).

"(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."

Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (quoting Anderson v. Foundation for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)).[3]

   B.  Interrogatory, Response, and Court Order at Issue

   During discovery, Siemens served the following interrogatory:

   **INTERROGATORY NO. 14:**  Separately, for each apparatus, product, device, process, method, act, or other instrumentality identified by VMI pursuant to Northern District of California Patent Local Rule 3-1(f) (as adopted by the Court for purposes of this action) or in response to Siemens' Interrogatory No. 8, provide an identification and description in a claim chart (including references to applicable production numbers of VMI's document production) of how and where each patent claim limitation is found in each apparatus, product, device, process, method, act or instrumentality.

(Docket Entry 273-2 at 3-4 (second underlining added).)  VMI responded, in pertinent part, as follows:

---

   [3] One district court in this Circuit also has utilized an additional five-factor test from Southern States – relating to the imposition of sanctions under Rule 37(c) – to guide the determination of appropriate sanctions under Rule 37(b)(2).  See Thompson v. United States Dep't of Housing and Urban Dev., 219 F.R.D. 93, 103 & n.8 (D. Md. 2003) (stating that, because "a violation of *Rule 37(c)* permits a court to impose most of the very serious sanctions listed at *Rule 37(b)(2)*, the court's analysis in *Southern States* is helpful in addressing requests for sanctions under *Rule 37(b)*").  This Court, however, does not believe that those five factors apply to sanctions under Rule 37(b)(2), because the Fourth Circuit applied them to "determin[e] whether non-disclosure of evidence is substantially justified or harmless," Southern States, 318 F.3d at 596.  The Fourth Circuit had to make that determination because the express terms of Rule 37(c)(1) provide an exception to exclusion of evidence if the party's failure was substantially justified or harmless.  See id.  Rule 37(b)(2), however, does not.

**RESPONSE TO INTERROGATORY NO. 14:** . . . Information responsive to this interrogatory is provided in Plaintiff's Revised Disclosure of Asserted Claims and Preliminary Infringement Contentions to Defendant, which was served on Defendant on July 13, 2006.

(Docket Entry 138-6 at 9-10.)

Siemens considered VMI's foregoing response to Interrogatory No. 14 inadequate and moved the Court to order VMI to provide complete responses to Interrogatory No. 14. (Docket Entry 137.) On July 19, 2007, the Court, per Magistrate Judge Eliason, held a hearing during which it addressed that motion to compel, including specifically Interrogatory No. 14. (See Docket Entry 258 at 118-38.) At that hearing, Siemens explained that it sought the information in Interrogatory No. 14 to respond to VMI's anticipated trial argument that VMI sold products covered by VMI's patents:

> MR. HOHENTHANER [on behalf of Siemens]: [VMI] did identify several products that they contend fall within the scope of their patents and so this interrogatory is trying to find the basis for those contentions. So, basically, if [VMI] wants to argue to the jury that they sold -- made and sold certain products that fall within the scope of their patents, we don't necessarily agree with that; and so we want the opportunity to challenge that; and so we've asked them to identify in a claim chart form what portions of these products do you contend correspond to each claim limitation.
>
> . . . .
>
> Because it's directly relevant to things such as damages. It shows use of the invention. They've affirmatively taken the position in this case that they did sell products that fall within the scope of the patents. I presume they're going to want to argue to the jury that they made products covered by the patents. We should not be bound to accept those contentions.

(Id. at 118:13-120:14.)

The Court then inquired as to whether VMI would take the position at trial that its products embodied the patents in-suit:

> THE COURT: . . . Is there going to be any evidence issued that any of these patents or any of these products, excuse me, are covered by your patents; that you're going to try and introduce any evidence of that to the -- well, for the trial?
>
>     . . . .
>
> MR. O'BRIEN [on behalf of VMI]: Your Honor, it's part of the story. You know, VMI was a small company and did sell some machines; and those machines were -- according to our interrogatory responses, embodied some of the claims in the patents.
>
> THE COURT: Why do you need to tell the jury that?
>
> MR. O'BRIEN: I don't know that we do.
>
> THE COURT: Well, if you don't, then let's eliminate it and then they don't need the information.
>
> MR. CONNOR [on behalf of VMI]: Your Honor, we -- we need to confer with our team on this . . . .
>
>     . . . .
>
> THE COURT: Well, I'll tell you from my point of view you can't tell the jury they're covered by the patent if they're not covered by the patent; and they disagree that they're covered by the patent, so it's a -- it's a question. If you want to tell the jury that, you're going to give them the answers. If you can get by without doing that, then they don't need the answers.
>
> MR. O'BRIEN: The entire exercise he's asking us to do is not required by the rules or the law.
>
> THE COURT: I understand. And it's not required that you tell the jury that you have any products that are covered by the patent.

(Id. at 121:3-122:20.)

VMI thereafter stated that it may want to show the jury that its machines possessed a patent plate or sticker marking the

product, as required to claim certain damages. (<u>Id.</u> at 123:10-25:15.)  Additionally, VMI asserted that "there is no issue of false marking in this case."  (<u>Id.</u> at 124:18-19.)  The Court, however, rejected the contention that VMI could pursue any of these theories at trial, without affording Siemens discovery as to whether VMI's machines actually contained the patented technology:

> THE COURT:  You patent a machine.  You put some patent plates on it, but it might not -- but that machine might not have contained the patent.  You tell the jury that.
>
> MR. CONNOR [on behalf of VMI]: Well, it was a matter of -- [Siemens's counsel] hasn't shown that.
>
> THE COURT:  I don't think you want to tell the jury that, so I don't think that -- I'm being facetious.  If it's not -- if you want the jury to believe that machine practiced your patents, then it's going to be an issue. If you want to just tell them you put that -- those plates on the machines, but you're -- you are not going to swear that they actually practiced the patent, well then you can tell them that.  The jury is going to look at you with a real strange eye and you don't want to do that.  I want the jury to have accurate information; and if those machines actually practice all of those patents, then I suppose they need to know.  If you can get by without telling them in some way that the machines actually practice the patent, then maybe –
>
> . . . .
>
> MR. CONNOR:  We put stickers on the machines.  The law does not say that at trial we have to come in and prove that the machines with the stickers actually had the patents.
>
> THE COURT:  Does the law say that in order to have any recovery at all you have got to have a machine that had a sticker on it?
>
> MR. CONNOR:  Absolutely not, Your Honor.
>
> THE COURT: . . . that's why I'm saying, If you don't need it, you don't need it.  Don't tell the jury about it.

(<u>Id.</u> at 126:9-128:7.)

The Court then ordered VMI to respond to Interrogatory No. 14 if VMI intended to take the position before the jury that VMI's products practiced VMI's patents in-suit:

> THE COURT: I'm going to order that you make the decision as to whether you're going to be involving your machines that you've made as an issue in this trial with respect to claiming that they -- if you've made machines that contain the patents that are at issue in this case; and if the answer -- if the decision is in the affirmative, then you will provide the information required by Interrogatory 14.

(Id. at 130:8-15.)

After Siemens agreed to extend the date for providing the information responsive to Interrogatory 14 (see Docket Entry 273 at 4 n.2), VMI served Siemens with claims charts (see Docket Entry 284 at 2). Shortly thereafter, the Court issued its written order memorializing the rulings made on July 19, 2007, including as follows:

> [I]f VMI intends to offer any evidence at trial regarding an embodiment of any of the patents-in-suit by a VMI machine, then VMI must identify each version of each VMI machine that VMI contends incorporated any claimed inventions, and provide an identification and description in a claim chart (including references to applicable production numbers of VMI's production or attach the documents, or in some way make identification of such documents clear and accessible) of how and where each patent claim limitation is found in each such version of the VMI machine.

(Docket Entry 274 at 4 (emphasis added).) VMI then served a supplemental set of claims charts on Siemens. (See Docket Entry 284 at 2.)

C.  Analysis

The Court now examines the parties' arguments.  Initially, the Court addresses Siemens' contention that, because VMI's claims charts only addressed Claim 1 of each patent, the Court should preclude VMI from arguing that any of its products embody Claims 2-25 of the '807 patent or Claims 2-30 of the '211 patent.  (Docket Entry 273 at 4.)  VMI has conceded that it did not provide any information about those patent claims and has agreed that it will not argue at trial that its products practiced any of those claims from its patents.  (Docket Entry 284 at 3.)  Next, the Court examines whether VMI complied with the Court's Orders as to Claim 1 of each patent via the supplemental claims charts served by VMI on August 27, 2007 (and not simply the claims charts served by VMI on August 6, 2007).  The Court, however, concludes that, even in the supplemental claims charts, VMI insufficiently identified "how and where" its machines embody the respective Claim 1 of each patent.  Finally, after assessing the four relevant factors from Southern States, the Court determines that preclusion represents the proper sanction for VMI's non-compliance.

1.  Claims 2-25 of the '807 Patent and Claims 2-30 of the '211 Patent

Siemens contends that VMI did not provide any information regarding Claims 2-25 of the '807 patent or Claims 2-30 of the '211 patent and, therefore, the Court should preclude VMI from arguing to the jury that VMI's products embody those patent claims.  (Docket Entry 273 at 4.)  VMI concedes this point and states that

it "will not contend to the jury that any of [those] claims of the '807 or '211 patents are embodied in the VMI machine . . . ." (Docket Entry 284 at 3.)  The Court thus will grant Siemens's instant Motion with respect to Claims 2-25 of the '807 patent and Claims 2-30 of the '211 patent.

### 2.  Claim 1 of the '807 Patent and of the '211 Patent

Siemens argues that VMI failed to comply with the Court's Orders with respect to Claim 1 of both the '807 and the '211 patents. (Docket Entry 273 at 5.)  VMI provided Siemens with two sets of claims charts, the first on August 6, 2007, and the second on August 27, 2007.  (See Docket Entry 273-3; Docket Entry 284-1; Docket Entry 284-2.)  According to VMI, its claims charts of August 27, 2007, supplemented its claims charts of August 6, 2007, by providing the Bates numbers of referenced documents.  (Docket Entry 284 at 3.)  VMI's claims charts of August 27, 2007, however, also included other changes to the information in the claims charts beyond merely adding Bates numbers.  (Compare Docket Entry 273-3 with Docket Entry 284-1.)  VMI acted without court-authorization or Siemens's consent in delaying production of such information from August 6, 2007, to August 27, 2007.  Siemens, however, has not demonstrated that this delay resulted in any prejudice.

On the other hand, Siemens does ascribe prejudice to VMI's alleged failure (in either the claims charts of August 6, 2007, or of August 27, 2007) to describe "how and where" VMI's patent claims appear in VMI's products.  (Docket Entry 273 at 5-6; Docket Entry 286 at 2-3.)  VMI's claims charts broke down Claim 1 of the '807

patent and Claim 1 of the '211 patent into separate phrases (representing claim limitations) and juxtaposed those phrases to VMI's machines. (See Docket Entry 273-3; Docket Entry 284-1; Docket Entry 284-2.) For example, as to Claim 1 of the '807 patent and VMI's "Model 1" machine, VMI stated:

| U.S. Patent No. 5,546,807 Priority Date for all claims - Dec. 2, 1994 | Model 1 |
|---|---|
| **1. An apparatus for simultaneously displaying in real time, an image of at least one section of variable thickness of a three dimensional object** having a range of acoustical properties, said at least one cross section being any cross section of said object and selected by a viewer viewing aid displayed image, said apparatus comprising: | • SYSTEM SPECIFICATION<br><br>Note: The term "b-scan" in these documents does not refer to a specific image plane geometry, but rather refers to any arbitrary plane that displays the brightness of echo data.<br><br>"Guide to Model 1 Scanner" (June 1998) ("Introduction to the Model 1 Scanner"), VMI-PAT-123422; *id.* ("Selecting the Scan Format"), VMI-PAT-123430-33; *id.* ("Changing scan orientation"), VMI-PAT-123433-37. |

(Docket Entry 284-1 at 2 (underlining added).)[4]

According to Siemens, VMI's claims charts do not make clear "which exact components and operations described within [the referenced] documents [VMI] contends allegedly satisfy each claim limitation." (Docket Entry 286 at 3.) VMI has countered that it "diligently set forth its contentions concerning how Claim 1 of the '807 patent and Claim 1 of the '211 patent are embodied in VMI's

---

[4] Page citations to the exhibit containing the claims charts reflect the page numbers in the CM/ECF footer for the exhibit, rather than the internal pagination from the original claims chart.

machines." (Docket Entry 284 at 4; <u>accord</u> Docket Entry 294 at 3.)[5]

After reviewing these matters, the Court agrees with Siemens that, as to at least seven claim limitations belonging to Claim 1 of the '811 patent and three claim limitations belonging to Claim 1 of the '211 patent,[6] VMI's claims charts fail to show "how and where" those claim limitations appear in VMI's products.

For example, as to the limitation phrase "an apparatus for simultaneously displaying . . . an image of at least one section of variable thickness of a three dimensional object," VMI's claims chart references something titled "SYSTEM SPECIFICATION" and then lists certain documents produced in discovery. (Docket Entry 284-1

---

[5] VMI also wishes to re-hash arguments it made (unsuccessfully) to Magistrate Judge Eliason contesting the propriety of any order requiring them to produce the information in question. (<u>Compare</u> Docket Entry 258 at 123-28 <u>with</u> Docket Entry 294 at 2-3 & n.2.) The Court will not reexamine these matters in conjunction with the instant Motion because, if VMI believed that the Court erred by ordering VMI to provide this information, VMI should have objected to that order at the proper time. <u>See</u> Fed. R. Civ. P. 72(a).

[6] With respect to the '807 patent, Siemens identified these seven claims limitations as to which VMI failed to provide the required "how and where" information: (1) "an image of at least one section of variable thickness of a three dimensional object;" (2) "means adapted for radiating said object with a plurality of sonic beams;" (3) "each beam of said plurality of sonic beams generates a wave reflected from a plurality of locations distributed in all regions of said object;" (4) "terminal means for receiving a plurality of signals and displaying each signal as brightness at a respective one of said plurality of display locations;" (5) "address pointer means;" (6) "matching each buffer memory address to a memory address in said memory of said scan converter means;" and (7) "transferring to each said buffer memory address said datum stored in said memory address of said scan converter memory respectively." (Docket Entry 273 at 5-6.) With respect to the '211 patent, Siemens identified these three claims limitations for which VMI offered insufficient "how and where" responses: (1) "selecting at least one slice of the volume that is upstream from a scan range of the volume;" (2) "scanning a first portion of the volume defined by the at least one slice that is less than the volume at a scan rate that is based on a ratio of a volume of the first portion to the volume;" and (3) "eliminating scanning of a second portion of the volume that extends downstream from the at least one slice to the scan range." (<u>Id.</u> at 6.)

-13-

at 2.)[7]  Pursuant to Magistrate Judge Eliason's directives, VMI had to produce claims charts that "provide[d] an identification and description" of the location (i.e., "where") within VMI's products Siemens could find the parts that encompassed the various claim limitations of the respective patents, as well as the manner in which (i.e., "how") each such part did so.  (Docket Entry 274 at 4.)  In the face of this obligation to identify and to describe, VMI offered only cryptic references to parts and to the titles and bates-stamps of documents produced in discovery.  VMI has not explained how such information reasonably provided Siemens with a "description" of "where" within VMI's products Siemens could find the various parts that allegedly embodied the limitations at issue, much less "how" any such parts carried out the patented function.[8]  VMI thus has failed to comply with the Court's directive requiring VMI to identify and to describe for Siemens "how and where" VMI's patent claims appear in VMI's machines.

---

[7] VMI applied the same approach for each of the other nine limitations phrases about which Siemens complains.  (See Docket Entry 284-1; Docket Entry 284-2.)  In other words, in comparing VMI's machines to each of those limitation phrases from Claim 1 of patents '807 and '211, VMI simply listed generic terms, such as front end board, transducer, timing board, receive processor board, rx processor, detector board, and scan converter, followed by references to documents produced in discovery, without further explanation.  (See id.)

[8] VMI could not satisfy its obligation to "provide an identification and description" of "how and where each patent claim limitation is found" simply by identifying a part by its generic name and then citing documents produced in discovery.  The Court explicitly designated such discovery material references as but one thing that VMI had to "includ[e]" within the ordered "identification and description."  (See Docket Entry 274 at 4.)  VMI's view effectively would convert the word "including" in the prior order to "such as."  (See id.)

### 3. VMI's Software Source Code

Siemens also has argued that "many of the claim limitations require action or other functionality that if actually implemented in [VMI's] products, would necessarily involve some portion of the computer software source code." (Docket Entry 273 at 6.) According to Siemens, VMI failed to provide an explanation of "how and where" the source code for VMI's products encompass any of the claim limitations of VMI's patents in-suit. (Id.) In addition, Siemens has contended that VMI failed to provide the source code to Siemens for inspection. (Id.) VMI has responded that this argument has "nothing to do with whether VMI's patents are embodied by its machines." (Docket Entry 284 at 4.)

To resolve this matter, the Court first must assess whether Interrogatory No. 14 required VMI to provide information about the source code of VMI's machines. The plain language of Interrogatory No. 14 does not expressly reference source code. (See Docket Entry 273-2 at 3-4.) By contrast, in Interrogatory No. 16, Siemens explicitly requested that VMI "[i]dentify each version of every ultrasound product made . . . by or on behalf of VMI since January 1, 1990, and . . . identify by production number all . . . computer source code . . . for each such version . . . ." (Docket Entry 138-8 at 3 (emphasis added)).

At the hearing before Magistrate Judge Eliason, Siemens explained that Interrogatory No. 16 was similar to Interrogatory No. 14, but sought information related to prior art issues:

MR. HOHENTHANER [on behalf of Siemens]: And so Interrogatory No. 16 is similar, but it's in the prior art sense. . . . [W]e asked this interrogatory so we had some basis for tying some of these documents we got to particular dates; because a lot of [VMI's] prior work is prior art to the patents we're dealing with here and likely is very, very important to our invalidity case.

(Id. at 138:16-139:5.) After discussing Interrogatory No. 16 with the parties, the Court ordered that VMI produce the source code:

THE COURT: We're talking about Model 1 and you want --

. . . .

MR. HOHENTHANER [on behalf of Siemens]: Source code, circuit diagrams, and the last was user manuals.

MR. O'BRIEN [on behalf of VMI]: Your Honor, the Model 1 is the only product that VMI ever sold.

THE COURT: Do you have that? Can you just produce that?

MR. O'BRIEN: Well, we would be happy to do that if the Court would like, but we would like to ask Siemens to do the same for all the products it sold.

THE COURT: So you will do that. Does that take care of this interrogatory?

MR. HOHENTHANER: I think that, in connection with our earlier discussions, takes care of that.

(See Docket Entry 258 at 146:19-147:11.) The Court's order regarding source code thus relates to Interrogatory No. 16, not Interrogatory No. 14.[9]

Nor does the Court find, based on the current record, that VMI has denied Siemens access to VMI's source code for VMI's machines. Siemens stated that its attorney and technical expert sought to

---

[9] In other words, Interrogatory No. 14 did not require VMI to show "how and where" the source code of VMI's machines embodied VMI's patent claims, but rather solicited from VMI a showing of "how and where" each patent claim limitation appeared in VMI's machines.

inspect the source code at the offices of VMI's attorneys and that VMI produced an incomplete set of source code. (Docket Entry 273 at 7.) According to VMI, its source code had been available for over ten months before Siemens inspected it and that a technical problem prevented Siemens from reviewing the source code. (Docket Entry 284 at 5; Docket Entry 294 at 4.) VMI has indicated that it fixed the technical problem and that Siemens may inspect these materials upon proper notice. (Id.) Further, VMI has reported that it produced the source code to Siemens in printed form, as well as copies of the "software release binders" to assist Siemens in reviewing the source code. (See id.; see also Docket Entry 294-2). Under these circumstances, the Court cannot find that VMI failed to comply with the Court's order (with respect to Interrogatory No. 16) that VMI produce the source code at issue.

### 4. Appropriate Sanction

Siemens has requested an order precluding VMI from contending at trial that VMI's products embody any claim of the '807 or '211 patents. (Docket Entry 273 at 8.) Determination of the appropriate sanction for the non-compliance that the Court has found, see supra, pp. 10-14, requires analysis of the four factors identified by the Fourth Circuit in Southern States, see supra, pp. 4-5. Ultimately, the Court concludes from the required review that it should preclude VMI from arguing to the jury that VMI's products encompassed any claims of VMI's patents in-suit.

First, the Court must consider "whether [VMI] acted in bad faith," Southern States, 318 F.3d at 597. In this case, the Court

-17-

held a hearing in which it discussed in detail VMI's obligation to provide the information requested by Interrogatory No. 14. (Docket Entry 258 at 118-38.) The Court thereafter entered a written order further documenting the matter. (Docket Entry 274.) VMI has not provided a reasonable excuse for its failure to fully comply with the Court's directives; instead, in responding to the instant Motion, VMI simply offered a conclusory assertion that it provided sufficient information and re-hashed its position (previously rejected by Magistrate Judge Eliason) that it should not have to provide the "how and where" information requested by Siemens. (See Docket Entry 284 at 2-4; Docket Entry 294 at 2-3.)

In light of these considerations, the Court finds that VMI acted in bad faith in failing to provide a proper response to Interrogatory No. 14, as the Court directed. See, e.g., United States v. Barker, No. 3:06CR373, 2010 WL 2650885, at *3 (W.D.N.C. July 1, 2010) (unpublished) ("A non-complying party has acted in bad faith where he has failed to comply with a court ordered [discovery device] of which he had actual notice and where his failure to comply was 'willful' and not due to his inability to [comply]."); Plant v. Merrifield Town Ctr. Ltd. P'ship, Nos. 1:08CV374(TSE/JFA), 1:08CV566, 2009 WL 6082878, at *6 (E.D. Va. Dec. 23, 2009) (unpublished) ("In this circuit, bad faith includes willful conduct, where the [litigant] 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." (quoting Rabb v. Amatex Corp., 769 F.2d 996, 1000

(4th Cir. 1985))), recommendation adopted in relevant part, 711 F. Supp. 2d 576, 581-88 (E.D. Va. 2010).

Second, the Court must examine "the amount of prejudice that [VMI's] noncompliance caused [Siemens]," Southern States, 318 F.3d at 597. At the hearing, Siemens explained that it sought this information because "if [VMI] wants to argue to the jury that [VMI] sold -- made and sold certain products that fall within the scope of [VMI's] patents . . . [Siemens] want[ed] the opportunity to challenge that." (Docket Entry 258 at 118:17-21.) VMI's failure to provide a complete interrogatory response substantially prejudiced Siemens because it left Siemens without information reasonably necessary to Siemens's effort to challenge VMI's contention that VMI's machines embodied VMI's patents in-suit.

Third, the Court must address "the need for deterrence of the particular sort of non-compliance," Southern States, 318 F.3d at 597. As another court in this Circuit has noted, non-compliance of this sort calls for deterrence because it "places an undue burden on the opposing party as well as the Court." See Progressive Minerals, L.L.C. v. Rashid, No. 5:07-CV-108, 2009 WL 2761295, at *4 (N.D.W. Va. Aug. 28, 2009) (unpublished) (ordering sanctions for defendants' failure to comply with court's order compelling them to respond to discovery). "It is important that others contemplating this type tactic understand that it is an unacceptable practice to fail to [comply with discovery requests], and especially in response to a court order." Id. For these reasons, the Court

concludes that principles of deterrence support imposition of the preclusion sanction in this case.

Finally, the Court must assess "whether less drastic sanctions would have been effective," Southern States, 318 F.3d at 597. Magistrate Judge Eliason specifically stated that VMI either must respond to Interrogatory No. 14 or must forego claiming at trial that VMI's machines practiced its patents in-suit. (Docket Entry 258 at 130:8-15; Docket Entry 274 at 4.) VMI thus was fully aware of the consequence of non-compliance. Given that fact, other types of sanctions, such as a monetary penalty and a further order to respond, would not suffice, but rather would tend to undermine the credibility of the Court (and thus the ability of the Court to deter non-compliance by litigants in the future). See generally Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989) (observing in analogous context that, where litigant receives fair notice of court-directive and potential consequence of inaction, "the [Court] ha[s] little alternative [but to impose said sanction because] . . . [a]ny other course would have [the effect of] plac[ing] the credibility of the [C]ourt in doubt"). Nor does the preclusion sanction represent an especially harsh penalty in this case, particularly in light of VMI's acknowledgment that it need not offer evidence regarding its products to make out its infringement case. (See Docket Entry 258 at 121:15-122:6, 128:1-8.)

In sum, the Court concludes that the relevant factors all support entry of an order precluding VMI from contending to the jury that its machines embodied its patents in-suit.

## III. CONCLUSION

The Court has found that VMI failed to obey the Court's directives regarding Interrogatory No. 14, in that VMI's claims charts fell short of providing an adequate description of "how and where" VMI's products encompassed VMI's patent claims. Moreover, the Court has determined that precluding VMI from contending to the jury that VMI's machines embodied its patents represents the appropriate sanction for VMI's non-compliance. As a result, the Court will grant Siemens's instant Motion, will preclude VMI from presenting evidence or argument at trial that VMI's products contained VMI's patents in-suit, and will order VMI to show cause why it and/or its counsel should not have "to pay the reasonable expenses, including attorney's fees, caused by [VMI's] failure [to comply with the Court's order]," Fed. R. Civ. P. 37(b)(2)(C).

**IT IS THEREFORE ORDERED** that Siemens's Motion to Preclude (Docket Entry 272) is **GRANTED** and that VMI is precluded from presenting evidence or argument at trial that VMI's products embodied VMI's patents in-suit.

**IT IS FURTHER ORDERED** that:

1) on or before July 20, 2011, Siemens shall serve VMI with a statement of the reasonable expenses, including attorney's fees, Siemens incurred due to VMI's failure to comply with the Court's order requiring VMI to respond to Interrogatory No. 14, which expense calculation shall reflect the fact that the Court did not adopt Siemens's position regarding VMI's software source code;

2) on or before August 10, 2011, VMI shall file a memorandum of not more than 10 pages showing cause why the Court should not require VMI and/or its counsel to pay Siemens's reasonable expenses, including attorney's fees, and shall include in said memorandum any objections VMI wishes to present as to the reasonableness of the expenses reported to it by Siemens, along with a certification that it has made reasonable efforts to meet and to confer in good faith with Siemens about such objections;

3) on or before August 31, 2011, Siemens may file a response of no more than 10 pages to VMI's foregoing memorandum; and

4) on or before September 21, 2011, VMI may file a reply of not more than five pages to any response filed by Siemens.

/s L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 29, 2011