# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VOLUMETRICS MEDICAL IMAGING,  )
LLC,  )
  )
        Plaintiff,  )
  )
        v.  )    1:05CV955
  )
TOSHIBA AMERICA MEDICAL SYSTEMS  )
INC. and SIEMENS MEDICAL SOLUTIONS )
USA, INC.  )
  )
        Defendants.  )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Plaintiff Volumetric Medical Imaging, LLC's ("VMI's") (1) Motion to Confirm Tolling of Time to File Objections Under Federal Rule of Civil Procedure 72 (Docket Entry 436); (2) Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order (Docket Entry 438); and (3) Motion to Seal (Docket Entry 443), filed on July 18, 2011. For the reasons set forth herein, the Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order will be denied, the Motion to Seal will be denied in part and granted in part, and the Motion to Confirm Tolling of Time to File Objections Under Federal Rule of Civil Procedure 72 will be treated as an Objection to the June 29, 2011, Memorandum Opinion and Order of this Court.

## Motion for Reconsideration &
## Motion to Confirm Tolling of Time to File Objections
## Under Federal Rule of Civil Procedure 72

I. Background

VMI filed this patent infringement action "concern[ing] diagnostic ultrasound machines and associated methods for acquiring and displaying images of the human body, in real time and in both two and three dimensions."  (Docket Entry 262, ¶ 1.)  Allegedly, "[t]hese technologies represent a significant advance in the field of diagnostic imaging, as they permit physicians to view the human body with a degree of spatial detail and clarity never before achieved by any other form of imaging." (Id.)

The Court, per United States Magistrate Judge Russell A. Eliason, previously held a hearing to discuss various discovery issues, including a then-pending motion to compel interrogatory responses filed by Defendant Siemens Medical Solutions USA, Inc. ("Siemens") (Docket Entry 137).  (Docket Entry 258.)  During that hearing, Magistrate Judge Eliason issued a variety of orders regarding discovery, including an order that required VMI to respond to an interrogatory by producing certain information in a claim chart (if VMI wished to offer certain evidence at trial). (Id. at 118-38.)  Of relevance, VMI was to "provide an identification and description in a claim chart (including references to applicable production numbers of VMI's production or attach the documents, or in some way make identification of such documents clear and accessible) of how and where each patent claim limitation is found in each such version of the VMI machine."

-2-

(Docket Entry 274 at 4 (emphasis added); accord Docket Entry 258 at 130, 133, 138.)  In response to that order, VMI provided Siemens with a claim chart. (See Docket Entry 273 at 3-4.)  Siemens promptly filed a motion contending that VMI's claim chart failed to comply with Magistrate Judge Eliason's directives. (Docket Entry 272.)  VMI subsequently served Siemens with a supplemental claim chart. (See Docket Entry 284-2; Docket Entry 284-3.)

Upon review of Siemen's motion and VMI's original and supplemental claim charts, the Court (per the undersigned United States Magistrate Judge) issued a Memorandum Opinion and Order on June 29, 2011, finding that "VMI failed to comply with the Court's directives." (Docket Entry 432 at 3.)  The Court noted that "VMI offered only cryptic references to parts and to the titles and bates-stamps of documents produced in discovery" and failed to "explain[] how such information reasonably provided Siemens with a 'description' of 'where' within VMI's products Siemens could find the various parts that allegedly embodied the limits at issue, much less 'how' any such parts carried out the patented function." (Id. at 14.)  As a result, the Court found VMI's non-compliance warranted an order precluding VMI from contending at trial that VMI's products encompass any claims of VMI's patents in-suit. (Id. at 17.)

VMI brings the instant Motion for Reconsideration asking the Court to reexamine that order to "correct a clear error and to prevent manifest injustice." (Docket Entry 439 at 3.)

-3-

## II. Standard for Motion for Reconsideration

Although the United States Court of Appeals for the Fourth Circuit has made it clear that the standards governing reconsideration of final judgments under Fed. R. Civ. P. 59(e) do not limit a court's authority to reconsider an interlocutory decision, see Saint Annes Dev. Co., Inc. v. Trabich, No. 10-2078, 2011 WL 3608454, at *3 (4th Cir. Aug. 14, 2011) (unpublished) ("The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." (quoting American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003))), courts in the Fourth Circuit have routinely looked to those factors as a starting point in guiding their discretion under Fed. R. Civ. P. 54(b). See, e.g., Mesmer v. Rezza, No. DKC 10-1053, 2011 WL 55448990, at *3 (D. Md. Nov. 14, 2011) (unpublished) ("While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, . . . courts frequently look to these standards for guidance in considering such motions . . . ." (internal citations omitted)); Phillip v. GEO Grp., Inc., No. 5:09-CT-3115-FL, 2011 WL 4946769, at *4-5 (E.D.N.C. Oct. 18, 2011) (unpublished) (same).

Moreover, other courts in the Fourth Circuit have observed that reconsideration under Rule 54(b) is "appropriately granted only in narrow circumstances: (1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or

-4-

(3) the need to correct a clear error or prevent manifest injustice." Pender v. Bank of Am. Corp., No. 3:05-CV-238-MU, 2011 WL 62115, at *1 (W.D.N.C. Jan. 7, 2011) (unpublished) (citing Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) (Osteen, J.)). In addition, this Court (per Magistrate Judge Eliason) previously has declared that "[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." United States v. Duke Energy Corp., 218 F.R.D. 468, 474 (M.D.N.C. 2003). Conversely, "a motion to reconsider is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." Hinton v. Henderson, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished) (internal citations and quotation marks omitted); see also Directv, Inc. v. Hart, 366 F. Supp. 2d 315, at 317 (E.D.N.C. 2004) (holding that motion to reconsider is not proper to "merely ask[] the court 'to rethink what the Court had already thought through – rightly or wrongly'" (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985))).

## III. Discussion

VMI has not demonstrated that reconsideration is necessary "to correct a clear error or prevent manifest injustice." Pender, 2011 WL 62115, at *1. Neither has VMI produced "new evidence that could

-5-

not have been obtained through the exercise of due diligence," <u>Duke Energy</u>, 218 F.R.D. at 474, nor has it shown that the Court "obviously misapprehended [VMI's] position or the facts or applicable law," <u>id.</u>

Rather, VMI has attempted to "present[] a better or more compelling argument that [it] could have presented in the original briefs on the matter." <u>Hinton</u>, 2011 WL 2142799, at *1. VMI argues that "it is clear from the [June 29, 2011 Memorandum Opinion and] Order that the significance of the documents cited in [the] claim charts were [sic] not credited" (Docket Entry 449 at 2) and that allowing the ruling to stand based on an inadequate record would amount to manifest injustice (<u>see</u> <u>id.</u>). In order to rectify said perceived injustice, VMI provides the Court with the specific documents cited in its claim chart and explanations of how the cited material addresses each relevant claim. (<u>See</u> Docket Entry 438.) VMI has not indicated why it failed to present these arguments in its earlier filing regarding this matter (Docket Entry 284). (<u>See</u> Docket Entries 439, 449.) Indeed, VMI had possession of the documents and presumably sufficient knowledge to offer such explanations at that time.

Further, contrary to VMI's contention, the Court imposed the preclusion sanction only after fully considering the fact that VMI attached documents to the claim chart (Docket Entry 449 at 2) and then determining that VMI failed to provide an adequate description in the claim chart as required by Magistrate Judge Eliason's directive (<u>see</u> Docket Entry 432). In addition, the Court did not

-6-

"misapprehend[] [VMI's] position," <u>Duke Energy</u>, 218 F.R.D. at 474.
Magistrate Judge Eliason directed VMI to "provide an identification
<u>and</u> description in a claim chart (<u>including</u> references to
applicable production numbers of VMI's production or attach the
documents, or in some way make identification of such documents
clear and accessible) of how and where each patent claim limitation
is found . . . ." (Docket Entry 274 at 4 (emphasis added).)

Complying with said directive necessarily required a claim
chart that consisted of a description of how and where each claim
limitation was found <u>as well as</u> references to applicable documents.
Instead, "VMI offered only cryptic references to parts and to the
titles and bates-stamps of documents produced in discovery."
(Docket Entry 432 at 14.) The citation to relevant documents did
not compensate for the lack of a sufficient description in the
claim chart. Accordingly, in light of VMI's failure to comply with
Magistrate Judge Eliason's order, the Court properly imposed the
sanction of which Magistrate Judge Eliasion had warned (<u>see</u> Docket
Entry 274 at 4) – precluding VMI from arguing at trial that any of
VMI's machines embody any claim of United States Patent Numbers
5,546,807 and 6,276,211. (Docket Entry 432 at 1.) As a result,
VMI's Motion for Reconsideration of June 29, 2011 Memorandum
Opinion and Order will be denied.

As a final matter, the Court notes that VMI's Motion to
Confirm Tolling of Time to File Objections Under Federal Rule of
Civil Procedure 72 contains the following footnote:

> Alternatively, should the Court deny VMI's Motion to Confirm Tolling of Time to File Objections Under Federal Rule of Civil Procedure 72, VMI hereby objects to the June 29 Order of the Magistrate Judge and incorporates by reference VMI's Brief In Support Of Its Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order, filed concurrently herewith.

(Docket Entry 436 at 2 n.1.)   In light of that language, said filing will be treated as an objection to the Court's June 29, 2011 Memorandum Opinion and Order.   The Court will permit VMI until January 17, 2012, to file a supplemental objection addressing both the June 29, 2011 Memorandum Opinion and Order and the instant denial of reconsideration, after which Defendants may respond prior to the referral of the matter to the assigned district judge for further review.

## Motion to Seal

### I. Background

The Court (per United States Magistrate Judge Eliason) entered a Stipulated Protective Order and a Supplemental Protective Order that allowed the parties to designate materials as confidential within the meaning of Federal Rule of Civil Procedure 26(c) and to limit the disclosure of such designated materials when produced in discovery.   (See Docket Entries 73, 74.)   The Supplemental Protective Order directed the parties:

1) to seek approval from the Court if they wished to file material with the Court under seal (Docket Entry 74 at 3);

2) to minimize the amount of material that they seek to have filed under seal (including by redacting documents, rather than by seeking to seal entire documents) (id. at 2-3); and

-8-

3) to include with any motion to seal a report about efforts to have the supplier of materials for which sealed filing is sought withdraw any confidentiality designations, as well as a showing sufficient to satisfy the test for sealing documents adopted by the United States Court of Appeals for the Fourth Circuit (id. at 2-4).

VMI brings the instant Motion to Seal asking the Court to seal thirteen exhibits filed in connection with its Brief in Support of Plaintiff VMI's Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order (Docket Entry 439). (Docket Entry 443.)

II. Standard for Motion to Seal

Under the Federal Rules of Civil Procedure ("the Rules"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Such "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).

"The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach." Id. at 30. "Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be

-9-

subject to discovery." Id. at 35. "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." Id. at 30; see also id. at 35 (noting that discovery "may seriously implicate privacy interests of litigants and third parties . . . [because] [t]he Rules do not distinguish between public and private information").

"Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." Id. at 30. Said provision states in relevant part that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> . . . .
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> . . . .
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c) (emphasis added).[1]

---

[1] "Although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in

(continued...)

-10-

Given the intrusive nature of the discovery process, "[i]t is not surprising, therefore, that issuance of protective orders in civil litigation has become almost routine." <u>In re Grand Jury Subpoena</u>, 836 F.2d 1468, 1477 (4th Cir. 1988).[2] Often, as in this case, rather than seeking protective orders each time the need arises, "parties agree[] to a 'blanket' protective order that permit[s] them to designate documents containing confidential business information." <u>Longman v. Food Lion, Inc.</u>, 186 F.R.D. 331, 333 (M.D.N.C. 1999); <u>see also</u> <u>Factory Mut. Ins. Co. v. Insteel Indus., Inc.</u>, 212 F.R.D. 301, 303-04 (M.D.N.C. 2002) (describing "'blanket' protective order [as one that] 'permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information'" (quoting <u>Bayer AG and Miles, Inc. v. Barr Labs., Inc.</u>, 162 F.R.D. 456, 463-64 (S.D.N.Y. 1995)); <u>Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.</u>, 121 F.R.D. 264, 267-68 (M.D.N.C. 1988) (noting that "[b]lanket or umbrella protective orders are becoming increasingly common as large scale litigation involves more massive document exchanges").

---

[1](...continued)
the broad purpose and language of the Rule." <u>Seattle Times</u>, 467 U.S. at 35 n.21.

[2] The Fourth Circuit has found no fault with this development, but instead has recognized that protective orders "aid the civil courts in facilitating resolution of private disputes." <u>In re Grand Jury Subpoena</u>, 836 F.2d at 1472; <u>see also</u> <u>In re Krynicki</u>, 983 F.2d 74, 75 (7th Cir. 1992) ("Protective orders entered during discovery in civil cases . . . promote[] disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited . . . .").

-11-

As in this case, courts regularly enter such orders "based on a general 'good cause' determination." Longman, 186 F.R.D. at 333; see also Parkway Gallery, 121 F.R.D. at 268 (observing that "showing of good cause to believe that discovery will involve confidential or protected information . . . may be done on a generalized as opposed to a document-by-document basis"). This Court, per now-Chief Judge James A. Beaty, Jr., has found that in cases, such as this one, "involv[ing] hundreds of documents containing confidential business information that Defendants feared could be used by Defendants' competitors to gain a business advantage," an agreed-upon, blanket protective order "arrangement [i]s essential to the efficient functioning of the discovery process . . . ." Longman, 186 F.R.D. at 333.

However, when (as in this case) parties seek to file material subject to a blanket protective order with the Court, additional legal complications arise. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of

-12-

the case."); <u>In re Krynicki</u>, 983 F.2d 74, 75 (7th Cir. 1992)
("Judges deliberate in private but issue public decisions after
public arguments based on public records. The political branches
of government claim legitimacy by election, judges by reason. Any
step that withdraws an element of the judicial process from public
view makes the ensuing decision look more like fiat; this requires
rigorous justification.").[3]

    "The right of public access to documents or materials filed in
a district court derives from two independent sources: the common
law and the First Amendment." <u>Virginia Dep't of State Police v.
The Washington Post</u>, 386 F.3d 567, 575 (4th Cir. 2004). "While the
common law presumption in favor of access attaches to all 'judicial
records and documents,' the First Amendment guarantee of access has
been extended only to particular judicial records and documents."
<u>Stone v. University of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 180 (4th
Cir. 1988) (internal citation omitted); <u>see also</u> <u>Rushford v. The
New Yorker Magazine, Inc.</u>, 846 F.2d 249 (4th Cir. 1988) (ruling
that First Amendment access right applies to summary judgment
motion attachments). "The distinction between the rights of access
afforded by the common law and the First Amendment is significant,
because the common law does not afford as much substantive
protection to the interests of the press and the public as does the
First Amendment." <u>Virginia Dep't of State Police</u>, 386 F.3d at 575

---

    [3] The right of access to court records flows from the right of access to
in-court proceedings; it applies in both civil and criminal cases. <u>See</u> <u>Rushford
v. The New Yorker Magazine, Inc.</u>, 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

(internal citations and quotation marks omitted).  As a result, "different levels of protection may attach to the various records and documents involved in [a] case." Stone, 855 F.2d at 180.[4]

The distinction between constitutional and common law access only becomes relevant, however, if the materials at issue actually constitute "judicial documents and records," Stone, 855 F.2d at

---

[4] "The common law presumption of access may be overcome if competing interests outweigh the interest in access . . . . Where the First Amendment guarantees access, on the other hand, access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855 F.2d at 180 (emphasis added). The United States Supreme Court has identified the following examples of "competing interests" that courts have found sufficient to overcome the common law right of access: 1) the interest in "insur[ing] that [court] records are not used to gratify private spite or promote public scandal [such as] through the publication of the painful and sometimes disgusting details of a divorce case"; 2) the interest in precluding the use of court "files to serve as reservoirs of libelous statements for press consumption"; and 3) the interest in preventing court files from becoming "sources of business information that might harm a litigant's competitive standing." Nixon, 435 U.S. at 598. Although the common-law access balance thus clearly accounts for interests associated with non-governmental litigants and/or third-parties, it is not clear how such interests fit into the First Amendment access analysis, given that test's use of the term "governmental interest." In other words, in the context of a civil case involving nongovernmental litigants and/or third-parties, how does one define or discern a "governmental interest"? Does the government have an interest in the vindication of an individual's right to personal privacy or a business's right to freedom from unfair competitive disadvantage? Some courts have addressed this conundrum by substituting the notion of "higher value" for "governmental interest" in such contexts. See Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009) (discussing cases that cited right to privacy, property right in trade secrets, privilege against disclosure of attorney-client communications, and duties created by contract as "private" interests that might overcome First Amendment right of access). In at least two decisions (one published, one not), the Fourth Circuit has endorsed the position that a private business's interests can overcome both the common law and the First Amendment rights of access without addressing this "governmental interest" question. See Columbus-America, 203 F.3d at 303 (reversing order "unsealing the list of the inventory of the recovered treasure" awarded to litigant because "value of the inventory may be damaged by premature release of the inventory"); Woven Elec. Corp. v. Advance Group, Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. May 6, 1991) (unpublished) (ruling that district court could have closed courtroom and could seal record to protect trade secrets).

-14-

180.  In this regard, the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995), in concluding "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights"); accord United States v. Blowers, Nos. 3:05CR93-V, 3:02CR93-V, 2005 WL 3830634, at *3 (W.D.N.C. Oct. 17, 2005) (Tilley, C.J.) ("Although the definition of the term 'judicial documents' is not entirely settled, 'there appears to be agreement that it does not arise from the mere filing of papers or documents, but only those used, submitted, or relied upon by the court in making its decision.'" (quoting Smithkline Beecham Corp. v. Synthon Pharm., Ltd., 210 F.R.D. 163, 167 (M.D.N.C. 2002))).  Accordingly, in any given case, some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment.  Still others may not qualify as 'judicial records' at all."  United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document,

-15-

because only then can it accurately weigh the competing interests at stake." <u>Virginia Dep't of State Police</u>, 386 F.3d at 576 (internal citations and quotation marks omitted); <u>see also</u> <u>Moussaoui</u>, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part. The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)).

Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

<u>Virginia Dep't of State Police</u>, 386 F.3d at 576 (internal citation omitted) (emphasis added).[5]

The mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable

---

[5] The docketing of a motion to seal can satisfy the "public notice" element of the "procedural" portion of the Fourth Circuit's sealing standard. <u>See</u> <u>Stone</u>, 855 F.2d at 181.

-16-

because only then can it accurately weigh the competing interests at stake." <u>Virginia Dep't of State Police</u>, 386 F.3d at 576 (internal citations and quotation marks omitted); <u>see also</u> <u>Moussaoui</u>, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part. The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)).

Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

<u>Virginia Dep't of State Police</u>, 386 F.3d at 576 (internal citation omitted) (emphasis added).[5]

The mere fact that a document was subject to a blanket protective order does not relieve the parties or a court of the obligation to comply with the Fourth Circuit's otherwise applicable

---

[5] The docketing of a motion to seal can satisfy the "public notice" element of the "procedural" portion of the Fourth Circuit's sealing standard. <u>See</u> <u>Stone</u>, 855 F.2d at 181.

-16-

sealing regimen. See, e.g., Walhonde Tools, Inc. v. Allegheny Energy, Inc., Civil Action No. 2:06-0537, 2008 WL 4509365, at *1-2 (S.D.W. Va. Sept. 30, 2008) (applying Virginia Dep't of State Police/Stone/Rushford test in denying plaintiffs' unopposed motion "requesting leave to file under seal six exhibits attached to their motion for summary judgment . . . [where] plaintiffs assert[ed] that the documents at issue have been designated as confidential pursuant to protective orders"); Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone" (internal brackets, ellipses, and quotation marks omitted)).

As to the level of substantive protection due to the documents at issue in this case, the Court notes that significant authority indicates that "material filed with discovery motions is not subject to the common-law right of access." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001); accord Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with

-17-

discovery proceedings."). Other courts have gone further and declined to apply common-law right of access and/or First Amendment analysis to discovery material attached to any "nondispositive motion" (and instead required only a showing sufficient to trigger protection under Rule 26(c)). See, e.g., Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood cause' is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."). Still other courts have drawn the line of demarcation as to the common law right of access between discovery motions and other nondispositive, pretrial motions. See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their supporting documents."). It does not appear that the Fourth Circuit has made clear its position on this subject, but it has stated "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights." In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4 (emphasis added).

III. Discussion

In this case, VMI filed the exhibits at issue in connection with a nondispositive, pretrial motion relating to a discovery dispute. (See Docket Entry 438.) Accordingly, in the view of most courts, no right of access applies. See, e.g., Chicago Tribune, 263 F.3d at 1312; Anderson, 805 F.2d at 10. Even under that view,

-18-

however, VMI still must comply with Magistrate Judge Eliason's Supplemental Protective Order (including the requirement to limit sealed material by utilizing redaction rather than wholesale sealing) and must satisfy Rule 26(c)'s good cause standard. VMI's brief in support of its motion does little in this regard in that it contains only broad, general arguments regarding the documents. (See, e.g., Docket Entry 444 at 1 ("The documents in their entirety include technical discussion and details down to the component and circuit level, in some cases, for the different elements that comprise the VMI ultrasound machines.").) The Court nonetheless has conducted a complete review of the documents in question.

A.  VMI's Exhibits A2-A9, A12-A13

i.  Exhibits

VMI's exhibits A2-A9 and A12-A13 consist of the following documents:

Exhibit A2 - Model 1.00 System Requirements;

Exhibit A3 - Version 3.01 Software Functional Specification;

Exhibit A4 - 2D Array Specifications;

Exhibit A5 - Transducer Specification for Model 214U-a arrays;

Exhibit A6 - Feb2.00 Specification;

Exhibit A7 - Timing Board 2.0 Specification;

Exhibit A8 - Front End Board Feb3.00 Specification;

Exhibit A9 - Timing Board 2.0 Specification;

Exhibit A12 - 3-D Ultrasound Scan Converter Architecture; and

Exhibit A13 - Scan Converter Board Specification.

     The Court, upon its review of each exhibit listed above, agrees with VMI that said exhibits warrant sealing under Rule 26(c) (or, in the alternative, even if the First Amendment or common law right of access attached).  The Court's review supports VMI's contention that these documents "contain information that was not and is not publicly available and which information, if disclosed to the public, would damage VMI" (Docket Entry 444 at 2).  Further, given the prevalence of the technical data contained in said exhibits, efforts to redact the documents would be futile.  Accordingly, the Court finds that the documents included in Plaintiff's exhibits A2 through A9 and A12 through A13 "reflect important intellectual property of VMI" (Docket Entry 444 at 2), and, pursuant to Rule 26(c), as well as to the extent a common-law and/or First Amendment right of access attaches to the documents that VMI wishes to seal, the interest in protecting VMI from unfair competitive disadvantage warrants sealing of said material.  VMI's Motion to Seal (Docket Entry 443), therefore, will be granted with respect to VMI's exhibits A2-A9 and A12-A13.

     B. VMI's Exhibits A1, A10 and A11

          i.  Exhibits

     VMI's exhibits A1, A10 and A11 consist of the following documents:

     Exhibit A1 - Guide to the Model 1 Scanner;

     Exhibit A10 - Guide to the Model 1 Scanner - Preliminary Doppler Revision; and

Exhibit A11 - Memorandum regarding VMI and Model V360.

### ii. Application

Exhibits A1 and A10 appear to be user guides, or preliminary drafts of user guides, to VMI's products. Presumably, VMI distributed these or substantially similar documents to VMI's customers. Much of the information appears generic, rather than sensitive in nature. Similarly, though the memorandum in VMI's exhibit A11 may contain the label "confidential" on its face, it does not contain information that would warrant sealing the entire document when less drastic measures may be available. Despite Magistrate Judge Eliason's directive to minimize the amount of material that the parties seek to have filed under seal (including by redacting documents, rather than by seeking to seal entire documents) (see Docket Entry 74 at 2-3), there is no indication that VMI attempted, or even considered, any such effort. Given that this Court has previously denied a motion to seal filed by VMI partially on the grounds that "VMI's motion to seal does not explain why the Court must seal the entire [document] (i.e., why redaction of certain parts of the [document] would not suffice to protect any legitimate confidentiality interests)" (Docket Entry 427 at 3), VMI should have addressed this issue.

Accordingly, VMI's Motion to Seal (Docket Entry 443) will be denied with respect to VMI's exhibits A1, A10 and A11.

### Conclusion

With respect to VMI's Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order, the Court has determined that

-21-

grounds do not exist for this Court to reexamine its prior decision. Further, the Court has reviewed each of the documents which VMI seeks to seal under its Motion to Seal and concludes that VMI's exhibits A2-A9 and A12-A13 are appropriately sealed; however, the Court finds an insufficient basis to seal VMI's exhibits A1, A10 and A11.

IT IS THEREFORE ORDERED that VMI's Motion for Reconsideration of June 29, 2011 Memorandum Opinion and Order (Docket Entry 438) is DENIED.

IT IS FURTHER ORDERED that VMI's Motion to Confirm Tolling of Time to File Objections Under Federal Rule of Civil Procedure 72 (Docket Entry 436) is DENIED AS MOOT, in that said filing is treated as an Objection to the June 29, 2011 Memorandum Opinion and Order and VMI is granted until January 17, 2012, to supplement that objection and to file any objection to the instant denial of reconsideration.

IT IS FURTHER ORDERED that VMI's Motion to Seal (Docket Entry 443) is GRANTED with respect to VMI's exhibits A2-A9 and A12-A13, and DENIED with respect to VMI's exhibits A1, A10, and A11, but without prejudice to the re-filing of another motion to seal that addresses the deficiencies identified herein, on or before January 17, 2012. If VMI has not filed any such amended motion to seal by that date, the Clerk shall unseal VMI's exhibits A1, A10, and A11.

/s/ L. Patrick Auld<br>
<b>L. Patrick Auld</b><br>
<b>United States Magistrate Judge</b>

December 30, 2011

-22-